Jones v. Hurlburt.

CLAUDIUS JONES, A TAX-PAYER, SUING IN BEHALF OF HIMSELF AND ALL OTHERS IN LIKE SITUATION, APPELLEE, v. GEORGE F. HURLBURT, LEVI D. BATES, GEORGE C. McKAY, COUNTY COMMISSIONERS OF SEWARD COUNTY, THE LINCOLN & NORTHWESTERN RAILROAD COMPANY AND OTHERS, APPELLANTS.

1. **Internal Improvements:** DONATIONS OF COUNTY. In this case, *Held*, That in ascertaining the amount of donations already made by a county, including its subdivisions, to railroads or other works of internal improvement, for the purpose of seeing whether another proposed donation aggregated with those already made would be within the statutory and constitutional limit of ten per cent of the assessed valuation of the county, unpaid interest due on such previous donations should not be considered.

2. ――――: ――――: PROPOSITION FOR SUBMISSION OF QUESTION TO VOTE. The proposition submitted to the legal voters of Seward county for the issuance and donation of $36,000 of its bonds to aid in the construction of the railroad therein named, contained the following provision: *"Provided* said county commissioners shall be authorized by a two-thirds vote of the legal voters of said county of Seward to issue and give thirty-six thousand dollars of Seward county bonds to aid the construction of said line of railroad, and be also authorized by a two-thirds vote of the legal voters of the precincts through which said line of railroad shall be located, to issue and give thirty-nine thousand dollars to aid the construction of said line of railroad, which amount of precinct bonds shall be made up as follows: 'P' precinct, three thousand dollars," etc. *Held*, To vitiate the election, and the issuance and delivery of the bonds voted thereon enjoined.

3. ――――: ――――: ――――. Proposition to several precincts of S. county in the following form: "Shall the county commissioners of the said county of S. be authorized to issue and give to the Lincoln & Northwestern Railroad Company, or the Blue Valley Railroad Company, six thousand dollars of the bonds of said C precinct, * * * said bonds to be issued and delivered to either of said railroad companies upon the following conditions and none other: That said railroad companies, or either of them, shall construct a line of railroad from

some point on the east or south line of S. county, running thence west or north through said S. county to a point on the valley of the Blue river within the distance of one-half mile of the town of M.; thence north-west along the Blue valley to the north line of S. county," etc.    The election *held*, ineffectual to pass title to the bonds, and their delivery enjoined.

4. ———: ———: ———.    The proposition submitted to the legal voters of I. precinct was open to none of the above objections, and the company therein named constructed the road therein described, in strict conformity to the said proposition, which was carried by the requisite majority.    But before the issuance of the bonds the members of the board of county commissioners, becoming apprehensive that they might be enjoined, but before any writ had been served or issued, and without knowledge or information on the part of any of them, or of the railroad company that an injunction had been allowed, went to an adjoining county, taking with them a deputy clerk and the county seal, where said bonds were signed by the chairman and the impress of the seal placed thereon.    Upon said commissioners returning to S. county, and before the delivery of the bonds to the railroad company, an injunction was served on them.    *Held*, That said I. precinct bonds should be delivered to the railroad company.

APPEAL by defendant, The Lincoln & Northwestern Railroad from a decree of the district court for Seward county, POST, J. presiding, enjoining the delivery of certain county and precinct bonds to said defendant.

*O. P. Mason*, for appellant.

A precinct can issue its bonds in excess of the limitation of ten per cent to which a county is restricted.    *State v. Lancaster County*, 6 Neb., 214.    This is settled, and where propositions are submitted to a vote of several precincts, and at the same time and on the same day a proposition is submitted to vote county aid for the same purpose, the precinct aid for which the propositions are submitted at that election should not be aggregated with the amount proposed to be voted by the county in fixing the limit of its capacity to vote at the same election.    To hold otherwise would be

an unseemly thing. There is nothing in the constitution which prohibits the vote on the same day. The vote on the county proposition is entirely independent of the precinct propositions.

The propositions contemplated the building of a single line of road. But one road was to be constructed. The propositions are plain. They are not susceptible of two constructions. They are that one or the other of the companies named shall build a line of railroad to Milford, and thence to Seward, and from Seward northward through Seward county. If the Blue Valley Railroad built the contemplated line of road the same was to enter Seward county on the south line thereof, and run to Milford. If the Lincoln & Northwestern company built the contemplated line of road, it was to enter Seward on the east line of said county and run to Milford. From Milford the lines were identical, whichever company constructed the road. It is difficult to see how this proposition can be truthfully named a "a log-rolling scheme," a "fraudulent scheme," or alternative proposition.

*J. R. Webster* and *Norval Brothers*, for appellee.

Interest should be considered as part of the debt. 1 Jones on Mortgages, sec. 652. The county bonds are in excess because $39,000 of precinct bonds were voted at the same time, and these latter must be aggregated with the county proposition and its former indebtedness. The propositions carry vice on their face. 1. The grant is to one of two railroad companies, or in the alternative. *People v. Tazewell Co.*, 22 Ill., 147, 157. *McMillan v. Lee Co.*, 3 Iowa, 311, 318. *Lewis v. Com'rs*, 12 Kan., 186, 213. *Garragus v. Com'r's Polk Co.*, 39 Ind., 66. *I. B. & W. Ry. Co. v. Fountain Co.*, 39 Ind., 215. *Bamberg v. Com'rs*, 41 Ind., 502. *Clark v. Supervisors*, 27 Ill., 310. *Supervisors v. M. & W. R. R. Co.*, 21 Ill., 373. *Gulf R. R.*

Co. v. Marshall Co., 12 Kan., 230.    2.    The lines were different.    Marsh v. Fulton Co., 10 Wall., 676.    Monadnock R. R. Co. v. Peterborough, 49 New Hamp., 281.    3.    The county proposition contained the proviso making the obligation of the company to construct its road dependent on the popular assent to each precinct proposition, burdening each elector with the necessity to favor two propositions, instead of presenting each separately to his judgment.    An elector might see reason to favor either alone or to reject either, but to reject the one was to reject both.    4.    A provision unauthorized by statute was engrafted on the propositions.    The propositions required the levy of a sinking fund from ten years after their issue, while the bonds were not subject to call until twenty years after their date.    The accumulation of a great fund in the treasury for a long period before it is necessary is certainly inexpedient and improvident, and, being unauthorized by law, is vicious.    The bonds were executed in violation of the injunction.    No right can be obtained through or based upon such violation.    It is immaterial that no personal service had yet been had on the defendants.    If a party merely has notice of an injunction, though it has not been served on him, it is sufficient to require his obedience, and if he do not obey, the injured party is entitled to remedy for its breach. *Waffle v. Vanderhyden*, 8 Paige, 45.    *Hammond v. Fulton*, 1 Paige, 197.    *Ramstock v. Roth*, 18 Wis., 522.    *Thebant v. Canora*, 11 Ala., 143.    *Fowler v. Farnsworth*, 1 Swan (Tenn.), 1.    *Cumberland, &c., v. Hoffman*, 39 Barb., 16. *Taylor v. Hopkins*, 40 Ill., 442.    *Murdock's Case*, 2 Bland., 461.    *In re Chilles*, 22 Wall., 157.    High Injcs., 2d Ed., secs. 1422, 1461.    No corporate act can be done by the board of county commissioners outside of their county, nor yet away from the county seat.    *Merrick County v. Batty*, 10 Neb., 176.    Dillon on Mun. Corp., sec. 197.

Cobb, J.

Section 2, of article XII, of our state constitution, provides that no city, county, town, or precinct, municipality, or other subdivision of the state shall ever make donations to any railroad or other work of internal improvement, unless a proposition so to do shall have been first submitted to the qualified electors thereof at an election by authority of law, with a proviso that such donations of a county, with the donations of such subdivisions in the aggregate, shall not exceed ten per cent of the assessed valuation of such county.

The first point made by the appellee to sustain the decree in this case is that the court found that at the date of the submission and vote upon the question of making the donations involved in this case, the county of Seward was indebted for bonds donated to the Midland Pacific Railroad, the sum of one hundred thousand dollars; for unpaid interest due on said bonds, twenty-nine thousand eight hundred and nineteen dollars, and that Seward precinct, now constituting G and F precincts, was indebted for bonds issued to the Midland Pacific Railroad twenty-five thousand dollars, and for unpaid interest due thereon, three thousand and eighty-one dollars, making an aggregate county and precinct debt of one hundred and fifty-seven thousand nine hundred dollars, and no money in the treasury. That the assessed valuation of the county was not to exceed one million six hundred twenty-nine thousand three hundred forty-four dollars. Ten per cent of this assessed valuation only, amounting to one hundred and sixty-two thousand nine hundred and thirty-four dollars and forty cents, left a margin of only five thousand thirty-four dollars and forty cents between the donations already made by said county and its subdivisions to railroads and the limit of ten per cent on the assessed valuation of said county. If this

proposition could be sustained, it would be conclusive of the case. But I do not think that the language of either the provision of the statute or of the constitution warrants us in taking into consideration the unpaid interest now due on the county or precinct bonds in arriving at the amount of donations already made by the county and its subdivisions to railroads and other works of internal improvement. If the county had had the money on hand there can be but little doubt but she could have donated it, instead of her bonds, to the Midland Pacific Railroad, in which case the promoters of that work would have had the use of the money, and of course returned no interest to Seward county. She did not have the money, so she agreed to pay interest for a term of years for the use of money to donate to that promising work, and finally to pay the principal. She did not donate the interest in any sense. Nor do I think that the district court, by its general finding, could have intended to embrace that proposition. Therefore in arriving at the sum which the county had already donated to railroads or other works of internal improvement in order to see what sum she might still donate to such purposes, we must reject the items of unpaid interest. And the question whether the county had or had not money on hand to pay such interest is irrelevant. But the county had donated one hundred thousand dollars, and one subdivision thereof, to-wit, Seward precinct, now precincts F and G, had donated twenty-five thousand dollars, making "such donation of a county, with the donations of such subdivision, in the aggregate" amounting to one hundred and twenty-five thousand dollars, while upon the assessed valuation of the county, such donations under the constitutional and statutory limitation might reach the amount of one hundred and sixty-two thousand nine hundred and thirty-four dollars. Thus leaving a margin of thirty-seven thousand nine hundred and thirty-four dollars. So we see that the constitutional limitation was not exceeded

by the voting of an additional county donation of thirty-six thousand dollars, there still remaining after that was voted a margin of nearly two thousand dollars.

In the case of the *State, ex rel. A. & N. R. R., v. County Commissioners of Lancaster County*, 6 Neb., 214, this court held (I quote from the syllabus): "The limitation in section two, art. XII of the constitution, prohibiting counties, except on a two-thirds vote, from issuing its bonds in excess of ten per cent of the valuation, does not prohibit a precinct from issuing its bonds in addition to the amount which may be issued by a county."

While as an individual member I am inclined to doubt the correctness of that decision, I know of no disposition on the part of the majority of the court to reconsider it. So for the purposes of this case it must be considered as the law of this court.

The appellee makes the further point against the county bonds that they are in excess of the limitation, for the reason that at the same time of the submission of the question of the county indebtedness there were also submitted questions of precinct indebtedness amounting in the aggregate to thirty-nine thousand dollars. Without questioning the premises of counsel, that the bond is not the indebtedness but is only the evidence of it in negotiable form, that the obligation accrues at the date of the popular assent, I do not think that it leads to the conclusion which he seeks to establish, but the contrary. The argument says, were it not for these precinct bonds the county bonds might lawfully be voted. But there are no precinct bonds, nor obligation to issue or pay them, until the very moment of time when, by reason of the same vote, the obligation to issue and pay the county bonds becomes perfect. Can it be said that that which has no existence can stand in the way and prevent that which were otherwise lawful?

The proposition to make the donation of the county bonds, as submitted to the voters of Seward county, con-

tains at least four distinct conditions, but one of which, however, it is deemed important to notice. It is in the following words: "Provided said county commissioners shall be authorized  *   *   *   and also be authorized by a two-thirds vote of the legal voters of the precinct through which said line of railroad shall be located to issue and give thirty-nine thousand dollars of precinct bonds to aid the construction of said line of railroad, which amount of precinct bonds shall be made up as follows:  P precinct, three thousand dollars; I precinct, three thousand dollars; O precinct, twelve thousand dollars; J precinct, five thousand dollars; G precinct, ten thousand dollars, and C precinct, six thousand dollars   *   *   *   "

It is doubtful whether any other thing may be attached as a condition precedent to the taking effect of a vote of the people upon a proposition which by positive law is made dependent upon such vote alone.    But possibly by analogy to the law which requires a person elected to a public office to take an oath and give a bond before entering upon the duties of such office, it may be that a condition, such as the construction of the whole or a part of a certain work of internal improvement, or possibly the giving of a bond with security for such construction, may be attached to a proposition to vote a donation to such work.    But I do not think that a condition such as the result of a vote on another and distinct proposition submitted to the same or another constituency can be properly attached to any such proposition. It may be objected to this view that in such case the condition would be rejected and not the proposition to which it had been improperly attached.    This objection would be good if the condition affected the proposition alone.    But, on the contrary, its mischief goes to the vote itself, and is designed so to do.    When a proposition is submitted to a vote of the people, free of all conditions and combinations, the voter may take his choice without embarrassment between the affirmative and the negative.    But such may

not be the case when the question is enveloped by conditions and qualifications. There are voters who would resist the persuasions and personal magnetism of interested parties, if they knew that the result of an affirmative vote would take money out of their pockets, in the form of taxes, who would otherwise yield, depending for their protection upon some condition which has been artfully spread before their credulous eyes. It is a cheapening and belittling of the elective franchise to make the carrying out of the will of the people, as solemnly expressed at an election, depend upon the vote of another people upon another and different question. I therefore, and upon the above considerations, reach the conclusion that the proposition to donate the bonds of Seward county was insufficient, by reason of the above quoted condition or proviso, to sustain the vote for such donation.

We now reach the question which seems to be chiefly relied upon by the appellee as showing an inherent insufficiency in the propositions. The propositions all of them, except that to the voters of I precinct, contain the following language: "Shall the county commissioners of the county of Seward be authorized' to issue and give to the Lincoln & Northwestern Railroad Company, or the Blue Valley Railroad Company," etc., and again, "Said bonds to be issued and delivered to either of said railroad companies upon the following conditions and none other: that said railroad companies, or either of them, shall construct a line of railroad from some point on the east or south line of Seward county, running thence west or north to a point on the valley of the Blue river, within the distance of one-half mile of the town of Milford; thence north-west along the Blue valley to the north line of Seward county," etc.

This proposition speaks of two separate companies, one of which is to be the recipient of this donation, upon its constructing one of two distinct lines of railroad.

Upon this point we are cited to eleven cases—three of Illinois, three of Indiana, two of Kansas, one of Iowa, one of New Hampshire, and one of the supreme court of the United States.  These cases, nearly or quite all of them, arose out of transactions in which two or more railroad companies, in most of the cases, constructing lines of railroad crossing each other, entered into a pool, and caused propositions to be presented to the voters to donate so much to one and so much to the other, both to be carried as an indivisible proposition.  These have been not inaptly called "log-rolling schemes," and the decisions have been uniformly against their legality.  While it must be readily seen that the principle involved in these cases is not exactly applicable to the case at bar, yet some of them are not entirely without value in considering it, for the purpose of illustration.

In the case of *Monadnock Railroad v. Peterborough* and *Peterborough Railroad v. Peterborough*, 49 N. H., 281, it seems, in March, 1867, the town of Peterborough voted a gratuity of five per cent of its valuation, and appropriated the same to aid in the construction of "a railroad from the Manchester & North Weare Railroad at or near Parker's Station, through Peterborough Center village to the Cheshire railroad at or near State Line Station. Nothing was done under this vote, and it would appear that the railroad to which this gratuity was thus appropriated had been abandoned in the two years following 1867; for in March, 1869, an article was inserted in the warrant to see if the town will vote to appropriate the gratuity of five per cent of its valuation (raised by a vote at the annual meeting in March, 1867), upon the same conditions and limitations, specified in said vote as a gift or gratuity to any railroad corporation that will construct a road to or through Peterborough Center village, and will authorize and instruct the town railroad committee to elect for the town to what railroad corporation, and in aid to the con-

struction of what line of railroad said gratuity shall be given and applied.     *     *     *     At the town meeting, the above article was adopted.     *.     *     * The town committee soon met, and voted to appropriate said gratuity to the Monadnock Railroad, notified said road of that fact, which accepted the same and commenced negotiations to contract the building of their road.   June 11th, said committee, or a majority of them, had another meeting and reconsidered their former vote, and notified the officers of the Monadnock road of such reconsideration; and August 7th said committee, or a majority of the same, voted to appropriate this gratuity to the Peterborough Railroad Company, which company soon after accepted the same, and both companies have given sufficient guarantees that they will perform on their part the conditions required by the vote of the town.   *   *   * Both the Monadnock and the Peterborough railroads claim this gratuity, and have each brought a suit to recover it, and the town resists both suits.   *   *   *   Can the town delegate this power of appropriating the money to a particular road to any committee?

The town could not raise the money by a committee; that must be done by the voters present, and voting at the town meeting.   How must it be appropriated?   The law provides that 'any city or town may, *at a legal meeting,* duly notified and holden,   *   *   *   *raise by tax or loan* such sums of money,   *.   *   *   *and may appropriate the same* to aid in the construction of any railroad,   *   *   * *in such manner as they shall deem proper; Provided,* that two-thirds of the legal voters present and voting at such meeting shall vote therefor.'"

Finally the court say: "We think the vote of the town should designate the particular road to aid which the money is appropriated.   There are many considerations of public policy that would bear upon this question.   If there were rival routes, as in this case, the friends of one would

naturally oppose the other; but if through the interest of the railroads the town had got a railroad committee already appointed that was understood to be very evenly divided between these two or more rival routes, the friends of all these routes would likely be united in voting to refer the matter of electing the road to that committee (each trusting to his influence with the members of the committee), and thus carry a two-thirds vote for that measure, when if either route was brought directly and specifically before the town at its legal meeting, the required vote of two-thirds could not be obtained in its favor.    *    *    *.    We think the town can no more appropriate this money by a committee than they could raise it by the same committee; that the electing which of two or more roads should receive this gratuity would be, in fact, appropriating it, and that this can only be done, as the statute has provided, at the legal meetings of the town, and by the legal voters present and voting at such meetings." The judgment was for the defense in both cases.

The language of our constitution is: "No city, county, town, precinct, municipality, or other subdivision of the state, shall ever make donations to any railroad or other works of internal improvement, unless a proposition so to do shall have been first submitted to the qualified electors thereof at an election by authority of law." There cannot be a donation without a donee, and there can be no doubt of this proposition, that a grant to two persons or corporations in the alternative is insufficient to pass title in the thing granted unless there is power somewhere to elect between such two persons or corporations as to which shall receive it. Here is a donation, in terms, to "the Lincoln and Northwestern railroad company, or the Blue Valley and Northwestern railroad company." Who has the power to choose between these two corporations? Certainly not the county commissioners, for, as in the New Hampshire case, the voters of the precinct could no more delegate this

power to the county commissioners than they could the power to make the donation in the first instance. Indeed, in the case at bar there is no claim that power to designate which one of these corporations shall be the recipient of this donation has been delegated to or lodged in any one. The voters certainly have not designated who shall be the donee of their bounty. And hence the conclusion is irresistible that the grant remains imperfect and abortive for the want of a specific and certain grantee.

It may be said that under the language of our constitution, as well as of our statute, it is not the corporation that is the donee of city, county, precinct, or municipal aid, but the work itself. But if we look into these propositions we will find that all of them, except that to "I" precinct, designate the work to be performed as a condition precedent to the delivery of said bonds, as one of two separate and distinct roads, in the alternative. So that the same difficulty follows us to whatever point of view we may turn.

The proposition submitted to the voters of "I" precinct was free from either of the objections found or urged against the others, and as we have seen, neither the county bonds nor those of either of the other precincts can be sustained, it cannot be claimed that the county donation to the Midland Pacific railroad, the precinct donation to the same road aggregated, with the three thousand dollars voted to the Lincoln and Northwestern railroad company by "I" precinct, exceeds the constitutional limitation of ten per cent of the assessed valuation. It appears from the record of the proceedings of the county commissioners, at their meeting of June 9, 1879, that the vote on said proposition to issue the bonds of "I" precinct in aid of the construction of the Lincoln and Northwestern railroad was duly canvassed by the county clerk and two disinterested freeholders by him chosen for that purpose, and that said proposition was by such canvass declared carried by a vote of 54 yeas to 17 nays. It also appears from the stipulation

of facts signed by counsel for the respective parties that the line of railway from the east line of Seward county, by way of Milford and Seward, to the north line of Seward county, was constructed by the Lincoln and Northwestern railroad company, defendant, on the line proposed in said proposition for special election submitted to the electors of I precinct, and that such line was constructed in all respects as required by said proposition as a first-class western railroad, and within the time by said proposition conditioned and required, and such line so constructed has been by said company and its lessee ever since maintained and operated as by said proposition required. It therefore seems to be conclusively shown that precinct bonds to the amount of three thousand dollars were lawfully voted and donated by I precinct to the Lincoln and Northwestern railroad company, and that said company has earned the same by a strict compliance with all the terms and conditions upon its part to be performed according to the proposition and vote.

This brings us to the consideration of the last point made by counsel for appellee, which I understand to be that although all the preceding points as to any or the whole of said bonds be found in favor of their legality, yet, as the bonds were executed in violation of the injunction, that the decree of the district court perpetually enjoining the same and directing that they be canceled and destroyed should be affirmed. Counsel say in their brief: "So that, as we insist, even were the appellant entitled to this amount of bonds, or a portion of these subsidies, it could not on appeal in this case obtain *these* bonds so issued. These bonds, issued in violation of the process of the courts, must be canceled and the parties left to seek their remedies as if these bonds had not been signed, and these bonds, fraudulently signed and executed, must be destroyed." There is no doubt upon the authorities cited, and others, that when a party has actual notice that a writ

of injunction has been issued against him, or ordered to be issued, either in writing by an officer authorized to order its issuance or orally by a judge on the bench, he is as much bound to obey its commands as he is after the writ has been actually served on him. But this is as far as any of the cases go. The evidence is to the effect that the county commissioners, or some of them, and Mr. Galey "expected to have an injunction" according to the witness Sperk's testimony, according to that of Squire McCay "as I understood the object, there had been an injunction served on them, or they stated they expected one." Whatever may be said of the spectacle of a board of county commissioners with a deputy clerk and the county seal levanting to a neighboring county for the purpose of discharging official business—and we do not think that such conduct on the part of any of the actors in it has been or is likely to be too severely condemned—yet it neither amounted to a contempt of court nor the violation of an injunction of which none of the parties had knowledge or information as to its issuance or allowance.

The alleged infirmity in these I precinct bonds, then, is reduced to this, that they were in fact signed by the chairman and impressed with the county seal at a place outside of Seward county.

The case of *Town of Weyauwega v. Ayling*, 99 U. S. Supreme Court, 112, seems to be somewhat in point. That was an action at law wherein the holder of unpaid coupons, for interest due on certain bonds issued by said town to aid the construction of the Wisconsin Central Railroad, recovered a judgment thereon, and the town took the case to the supreme court on error. The chief justice delivered the opinion of the court, in which he says: "  *  *  The legal voters of the town, by a vote duly taken pursuant to authority for that purpose, directed the issue of the negotiable bonds in controversy. As soon as this vote was given, it became the duty of the chairman of the board of super-

visors, and the clerk of the town, to cause the bonds to be made out and delivered to the railroad company. Such was the requirement of the statute under which the vote of the town was taken. The designated officers had no discretion in the premises. After the vote an appropriate form of bond and coupons was lithographed and printed, with blanks in the bond for the signatures of the chairman and clerk. As printed, the bonds bore date June 1, 1871. At that time Fenelon was chairman and Verke clerk. The signatures of these officers were lithographed and printed on the coupons. Before the bonds were actually signed by Verke he had resigned his office and moved out of the town. Another clerk had been appointed and qualified in his place. Apparently to save the expense of a new lithograph and another printing of the bonds, Verke, after going out of office, affixed his signature to those bonds which had been printed. These bonds, so signed by Verke and by Fenelon, who actually was chairman at the time, were taken by Fenelon and delivered to the railroad company. This having been done, Ayling, the defendant in error, purchased the bonds, to which the coupons sued on were attached, and paid their full value, without notice of any claim of defence to their due execution. Under these circumstances we think the town is estopped from proving that Verke in fact signed the bonds after he went out of office. If Ayling had put himself upon enquiry when he made his purchase he would have found, 1, that the town had authority to vote the bonds; 2, that the necessary vote had been given; 3, that at the date of the bonds Verke was clerk and Fenelon chairman; 4, that their signatures were genuine; and 5, that the bonds had actually been delivered to the railroad company by Fenelon who was at that time chairman * * * There is no pretence that the obligation of these bonds is other or different from that authorized by the voters. So far as the record shows, the town has received and retains the consideration for which

they were voted     *     *     *     " The judgment was affirmed.

The above authority is quoted for the purpose of showing that it is not deemed of importance when or where the mere mechanical work of preparing the bonds for delivery, in accordance with a vote taken pursuant to law, is performed.  Here was an action at law on a coupon, the signatures to which were produced by a mechanical contrivance, out of the town, and out of the state in which the town is situated.  And the bond itself, which gave vitality to the coupon, was signed by the town clerk outside of the town whose bond it was, and more than forty days after he had gone out of office.  Yet none of these objections were deemed of any importance.  The only two important points were declared to be, that the bonds had been voted at a legal election under competent authority on a fair proposition legally submitted, and bonds of the kind, denomination, and character voted had been delivered by the competent authority to the corporation to which they were voted.

If I am not wrong in the above conclusion, then it would appear both idle and wasteful to cancel or destroy the I precinct bonds, because upon their cremation it would immediately become the duty of the board of county commissioners of Seward county to prepare others the exact counterpart of them and deliver them to the Lincoln & Northwestern Railroad Company.  Courts of equity look to the substance rather than to the form.  They will not follow a circuitous path when the desired point may be reached by a straight road.

It is a well-known rule that a court of equity, having obtained jurisdiction of a cause for the purpose of an accounting, will retain it for the purpose of rendering full and entire justice between the parties, etc.  I think that it is within the spirit of our code to apply this rule to all cases of equity jurisdiction.  It tends to prevent a mul-

tiplicity of actions, to a saving of unnecessary costs, and to more speedy justice.

The decree of the district court is therefore affirmed, except that in so far as the same in any manner relates to the bonds voted by I precinct, of said county of Seward, the said decree is modified so that it shall be the duty of the clerk of the district court of Seward county to forthwith deliver the said three thousand dollars in bonds voted by said I precinct to the board of county commissioners of Seward county. And immediately upon the receipt of said bonds by said board, it shall be the duty of said board and of the chairman thereof to deliver the said bonds to the defendant, the Lincoln & Northwestern Railroad Company.

And the said decree is further modified in this, that defendant shall pay six-sevenths of the costs of said action as well in this court as in the court below, and the plaintiff shall pay one-seventh of all such costs.

DECREE ACCORDINGLY.