IN RE SENATE FILE 31.

1. **Constitutional Law:** AMENDMENTS. Section 1, Article XV. of the constitution of Nebraska, does not prescribe the form in which propositions by the legislature to amend the constitution shall be made, whether by bill or joint resolution. Therefore, if an amendment is proposed by a bill duly passed by the requisite three-fifths majority of the members elected to each house, and entered upon the journals thereof, and afterwards presented to the governor for his approval, who retains the same for more than five days, Sundays excepted, the court will not for such causes declare the propositions in conflict with the constitution, and void.

2. ———: ———. The proposed amendment possesses no efficacy until approved by a majority of the electors of the state voting at the election, and the approval of the governor is unnecessary, and adds nothing to the validity of such proposed amendments.

3. ———: LIQUORS. The proposition to prohibit "the manufacture, sale, and keeping for sale of intoxicating liquors as a beverage," and to the proposition to license and regulate by law "the manufacture, sale, and keeping for sale of intoxicating liquors as a beverage," are independent, and to be separately submitted to the electors of the state for approval or rejection. Any elector may vote for either, or against either or both of such propositions.

4. ———: ———. The proposed amendments offer diverse modes of controlling the traffic in intoxicating drinks—in other words,

a choice of remedies for an acknowledged evil. From the nature of the case, but one of the proposed amendments could be carried into effect; therefore, votes cast in favor of both propositions nullify each other.

5. ———: TITLE. A title stating the object of a bill or provision to amend the constitution is unnecessary, and if added may be disregarded, such title being necessary only in cases of ordinary legislation.

6. ———: AMENDMENTS. A proposition to amend the constitution was passed by the senate by the necessary three-fifths majority, and entered at length on the journal. The proposition was then amended by the house, and as amended was passed by that body by the requisite majority, and entered at length on the house journal. Afterwards the house amendments were concurred in by the requisite majority of the senate, and such amendments entered at length on the senate journal. *Held*, That there was a sufficient compliance with section 1, Art. XV. of the constitution.

QUÆRE submitted by the legislature.

*William Leese, Attorney General, C. A. Robbins,* and *Henry St. Rayner,* for the constitutionality of the proposition, cited: *Hollingsworth v. Virginia,* 3 Dallas Report, 378. Jamison on Constitutional Conventions, 4th Ed., 588. *Green v. Weller,* 32 Miss., 650. *Koehler v. Hill,* 60 Iowa, 543. *Prohibitory Amendment Cases,* 24 Kas., 700. *State, ex rel. Hudd, v. Timme,* 54 Wis., 318.

*John L. Webster, A. J. Poppleton,* and *G. W. Ambrose, contra,* cited: *Hatch v. Stoneman,* 66 Cal., 634. Jamison on Constitutional Conventions, Sec. 538. *Koehler & Lange v. Hill,* 60 Iowa, 1883, 543. *Warren v. Mayor,* etc., 2 Gray, 84. *Allen v. Louisiana,* 103 U. S., 84.

MAXWELL, J.

The following resolution was, on the 11th of February, 1889, transmitted by the Hon. House of Representatives to this court:

" The Honorable The Supreme Court of the State of Nebraska.

"*Be it resolved by the House of Representatives of the State of Nebraska:*

" That, whereas, the constitutionality of Senate File 31 is being seriously questioned, on account of the form in which it passed the house, for the reason that it contains more than one subject, or at least two distinct and absolutely contradictory propositions; therefore be it

"*Resolved,* That said Senate File 31 as finally passed be submitted to our honorable supreme court for an opinion as to the constitutionality of said bill, or resolution, with reference to the following questions:

" 1st.   Is Senate File constitutional, notwithstanding its dual form, and the fact that it submits two separate and distinct amendments?

" 2d.   Can a voter under our system of government legally cast his ballot for two distinct and absolutely contradictory propositions at the same time?   That is, can he vote in favor or against both of the amendments at the same election?

" 3d.   If both the prohibitory and the license amendments secure a majority of the total vote cast at the election in November, 1890, will the effect be to defeat both measures?

" 4th.   Does the amendment and changing by the house of the title to the original senate bill come under the decision found in 17 Neb., 394, and does such amendment prove fatal to only part or all of the measures?"

The questions involved being of great importance, the case was entered on the docket under rule 23, and set down for argument.   Carefully prepared briefs have been filed by counsel, who affirm the validity of the propositions in question, and also by those who deny their validity, and after extended and elaborate arguments the matter is submitted to the court.

Senate File No. 31, when it passed the senate, was in the following form :

" A bill for an act to submit to the electors of the state, for rejection or approval, an amendment to the constitution of the state, to prohibit the manufacture, sale, and keeping for sale, of intoxicating liquors as a beverage, and providing for the manner of voting on such amendment.

" *Be it enacted by the Legislature of the State of Nebraska:*

" Section 1. That at the general election to be held on the Tuesday succeeding the first Monday of November, A.D. 1890, there shall be submitted to the electors of this state, for approval or rejection, an amendment to the constitution of this state, in words as follows : ' The manufacture, sale, and keeping for sale of intoxicating liquors as a beverage, are forever prohibited in this state, and the legislature shall provide by law for the enforcement of this provision.'

" Section 2. At such election, on the ballot of each elector voting for the proposed amendment to the constitution, shall be written or printed the words, ' For proposed amendment to the constitution, prohibiting the manufacture, sale, and keeping for sale of intoxicating liquors as a beverage,' and 'Against said proposed amendment to the constitution prohibiting the manufacture, sale, and keeping for sale, of intoxicating liquors as a beverage.' "

This bill was amended in the house to read as follows :

"A bill for an act to submit to the electors of this state, for rejection or approval, an amendment to the constitution of the state, to prohibit the manufacture, sale, and keeping for sale, of intoxicating liquors as a beverage, and providing for the manner of voting on such proposed amendment. And an amendment to the constitution of this state to license and regulate the manufacture, sale, and keeping for sale, of intoxicating liquors

as a beverage, and providing for the manner of voting on such proposed amendment.

" *Be it enacted by the Legislature of the State of Nebraska:*

"Section 1.    That at the general election to be held on the Tuesday succeeding the first Monday of November, A.D. 1890, there shall be submitted to the electors of this state, for approval or rejection, an amendment to the constitution of this state, in words as follows : 'The manufacture, sale, and keeping for sale, of intoxicating liquors as a beverage, are forever prohibited in this state, and the legislature shall provide by law for the enforcement of this provision'; and there shall also at said election be separately submitted to the electors of this state, for their approval or rejection, an amendment to the constitution of this state, in words as follows : ' The manufacture, sale, and keeping for sale, of intoxicating liquors as a beverage shall be licensed and regulated by law.'

" Section 2.    At such election, on the ballot of each elector voting for the proposed amendment to the constitution, shall be printed or written the words :

" ' For proposed amendment to the constitution, prohibiting the manufacture, sale, and keeping for sale, of intoxicating liquors as a beverage ;' or, ' Against such proposed amendment to the constitution prohibiting the manufacture, sale, or keeping for sale of intoxicating liquors as a beverage.'    There shall also be written or printed on the ballot of each elector voting for the proposed amendment to the constitution the words :

" ' For proposed amendment to the constitution that the manufacture, sale, and keeping for sale, of intoxicating liquors as a beverage in this state, shall be licensed and regulated by law ;' or ' Against said proposed amendment to the constitution that the manufacture, sale, or keeping for sale of intoxicating liquors as a beverage, shall be licensed and regulated by law.'

" Section 3.    If either of the said proposed amendments

shall be approved by a majority of the electors voting at the said election, then it shall constitute section 27 of article I. of the constitution of this state."

The bill was then returned to the senate, where the following proceedings were had.

" Mr. Lindsay moved:

" That the senate proceed to the consideration of the following House amendment to Senate File No. 31:

" A bill for an act to submit to the electors of the state, for rejection or approval, an amendment to the constitution of the state, to prohibit the manufacture, sale, and keeping for sale of intoxicating liquors as a beverage, and providing for the manner of voting on such amendment.

" Amendment to Senate File No 31.

" Amend Section 1, after line 5, by adding the following:

" And there shall also at said election be separately submitted to the electors of this state, for their approval or rejection, an amendment to the constitution of the state in words as follows:

" The manufacture, sale, and keeping for sale of intoxicating liquors as a beverage, shall be licensed and regulated by law.

" Amend Section 2, to make it read as follows:

" Section 2.   At such election, on the ballot of each elector voting for the proposed amendment to the constitution, shall be written or printed the words:

" ' For proposed amendment to the constitution prohibiting the manufacture, sale, and keeping for sale of intoxicating liquors as a beverage ;' or, ' Against said proposed amendment to the constitution, prohibiting the manufacture, sale, and keeping for sale of intoxicating liquors as a beverage.'   There shall also be written or printed on the ballot of each elector voting for the proposed amendment to the constitution, the words:

" ' For proposed amendment to the constitution, that the manufacture, sale, and keeping for sale of intoxicating

liquors as a beverage in this state shall be licensed and regulated by law,' or, ' Against said proposed amendment to the constitution that the manufacture, sale, and keeping for sale of intoxicating liquors as a beverage, shall be licensed and regulated by law.'

" Amend Section 3 to make it read as follows:

" Section 3.    If either of the said proposed amendments shall be approved by a majority of the electors voting at the said election, then it shall constitute Section 27 of Article I. of the constitution of this state.

" Amend the title by adding thereto the following words :

" And an amendment to the constitution of this state to license and regulate the manufacture, sale, and keeping for sale of intoxicating liquors as a beverage, and providing the manner of voting on such proposed amendment.

" A majority having voted in the affirmative the motion was agreed to.

" Mr. Howe moved :

" That the Senate concur in the House amendments to Senate File No. 31 :

" A bill for an act to submit to the electors of the state, for rejection or approval, an amendment to the constitution of the state, to prohibit the manufacture, sale, and keeping for sale of intoxicating liquors as a beverage, and providing for the manner of voting on such amendment.

" The question recurring on the motion to concur in the House amendments to Senate File No. 31 :

" 'A bill for an act to submit to the electors of the state, for rejection or approval, an amendment to the constitution of the state, to prohibit the manufacture, sale,, and keeping for sale of intoxicating liquors as a beverage,. and providing for the manner of voting on such amendment.

" The yeas and nays being demanded, those voting in the affirmative were:

" Messrs. Burton, Connor, Cornell, Funck, Gallogly,

Howe, Hoover, Hurd, Jewett, Keckley, Lindsay, Linn, Manning, Nesbitt, Pickett, Polk, Pope, Robinson, Roche, Shanner, Sutherland, Taggart, and Wetherald.—23.

" Those voting in the negative were:

" Messrs. Beardsley, Dern, Ijams, Maher, Norval, Paulsen, Paxton, Ransom, Raymond, and Wolbach.—10.

" A constitutional three-fifths majority having voted in the affirmative, the house amendments were agreed to."

The bill, duly certified, was then transmitted to the governor, who retained the same for more than five days, Sundays excepted, when it was transmitted to the secretary of state.

Section 1, Article XV. of the constitution, provides that, "Either branch of the legislature may propose amendments to this constitution, and if the same be agreed to by three-fifths of the members elected to each house, such proposed amendments shall be entered on the journals, with the yeas and nays, and published at least once a week in at least one newspaper in each county, where a newspaper is published, for three months immediately preceding the next election of senators and representatives, at which election the same shall be submitted to the electors for approval or rejection, and if a majority of the electors voting at such election adopt such amendments, the same shall become a part of this constitution. When more than one amendment is submitted at the same election, they shall be so submitted as to enable the electors to vote on each amendment separately."

In the carefully prepared printed brief of the able attorney who appeared for those who contend that the proposed amendments are unconstitutional, it is said: " Either branch of the legislature may propose amendments. The other branch of the legislature agrees to them. Three-fifths of all the members elected to each house shall agree to them. 'Such proposed amendments shall be entered on the journals.' This contemplates something entirely dif-

ferent than the passing of a 'bill' or the enacting of a law. 'No law shall be enacted except by bill.' (Sec. 10, Art. III.) No such thing is contemplated with reference to constitutional amendments. Every 'bill' shall have a title. No such thing necessary here. Every law shall have an enacting clause. (Sec. 10, Art. III.) No enacting clause is necessary in PROPOSING constitutional amendments. A bill may be passed by the 'assent of a majority of all the members elected to each house of the legislature.' (Sec. 10, Art. III.) A proposed constitutional amendment requires the agreement of three-fifths of all the members elected.

"A proposed 'amendment' shall be entered on 'the journals.' (Sec. 1, Art. XV.) A bill need not be entered on the journals.

"A proposed amendment need not be submitted to the governor for his approval, but every bill passed by the legislature 'shall be presented to the governor.' (Sec. 15, Art. V.)

"It is thus clear that amendments to the constitution cannot be 'ENACTED' or proposed by a 'bill.' None of the provisions of the constitution relating to 'bills' have any application to proposing constitutional amendments. In proposing amendments the branches of the legislature do not act as a legislature in the sense in which that body legislates."

"The supreme court of California, in *Hatch v. Stoneman*, 66 Cal., 634, said: "It will be remarked that the power to propose an amendment to the constitution is vested in the two houses—senate and assembly, and if two-thirds of all the members elected to each of the two houses vote in favor thereof, it shall be the duty of the legislature to submit such proposed amendment or amendments to the people, to be voted thereon. The proposal of the amendment or amendments is not by the legislature, as such, in the ordinary enactment of a law, and with the proposal the

governor has nothing to do. The act is that of two-thirds of each branch of the legislature."

Looking into the history of the country, and into the theory of the practice of submitting amendments, we find that the supreme court of California had good reason for the conclusion announced.

Jamison on Con. Conventions, Sec. 538, says:

"In America, however, fundamental legislation, even when carried on by our General Assemblies, is conducted in a manner very different from ordinary legislation. As in calling Conventions the legislature acts under checks unknown to it when exercising its usual functions, so here the restrictions upon its actions are so numerous and important, and the departures from the processes of ordinary legislation so wide, that it has been made a question whether, in proposing amendments to the organic law, the legislature is engaged in an act of legislation at all."

Sec. 547. "It is a matter of interest now to ascertain, first, the nature of the participation of a legislature in the work of amending a Constitution—whether the act it performs is an act of legislation or a special ministerial act, finding its analogies in those of a Convention, which we have seen are mere recommendations addressed to a body above and beyond it, which alone enacts them into laws; and secondly, when that body recommends amendments to a Constitution, the extent of its power in that particular."

The leading case on that subject appears to be *Hollingsworth v. Virginia*, 3 Dallas, 378, decided in the year 1798. In that case certain suits had been brought against a state, pending which the eleventh amendment of the constitution of the United States was adopted, which provides that, "The judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." On a plea of abatement to the case cited then

pending in the United States supreme court the objection was made that, " The amendment has not been proposed in the form prescribed by the constitution, and therefore it is void.   Upon an inspection of the original roll, it appears that the amendment has not been submitted to the president for his approbation."

"The constitution declares that 'every order, resolution, or vote, to which the concurrence of the senate and house of representatives may be necessary (except on a question of adjournment) shall be presented to the president of the United States; and before the same shall take effect, shall be approved by him, or being disapproved by him, shall be repassed by two-thirds of the senate and house of representatives,' etc.   Art. I., § 7.   Now, the constitution likewise declares, that the concurrence of both houses shall be necessary to a proposition for amendments.   Art V. And it is no answer to the objection to observe, that as two-thirds of both houses are required to originate the proposition, it would be nugatory to return it with the president's negative to be repassed by the same members; since the reasons assigned for his disapprobation might be so satisfactory as to reduce the majority below the constitutional proportion.   The concurrence of the president is required in matters of infinitely less importance; and whether on subjects of ordinary legislation, or of constitutional amendments, the expression is the same, and equally applies to the act of both houses of congress."   During the argument of that case, Chase, Justice, said :  " There can, surely, be no necessity to answer that argument.   The negative of the president applies only to the ordinary cases of legislation ; he has nothing to do with the proposition or adoption of amendments to the constitution."

The amendment was sustained by the court, and that decision has been followed in making all the amendments to the constitution of the United States from that time to the present.   See also *Green v. Weller*, 32 Miss. 650. *Keohler v. Hill*, 60 Iowa, 543.

In discussing this subject, Judge Jameson, in his valuable Treatise on Constitutional Conventions, Sec. 561, says: "In the Constitutions severally in force in Connecticut, Massachusetts, and New York, specific amendments may be proposed by the legislature by resolutions, which are then referred to the legislature next to be chosen. If adopted by the requisite majority, by such succeeding legislature, it is made the duty of the latter to submit the amendments to a vote of the people. The practice in those States has been not to present the resolutions containing the proposed amendments to the Governor for approval, but to present to that officer the subsequent act by which they are submitted to the people. In New York the propositions of amendments are sometimes incorporated in a bill, providing conditionally in one or more clauses for submission to the people, and in those cases the bill is submitted to the Governor for his approval. The existing Constitutions of Michigan and Minnesota provide that amendments may be proposed by a prescribed majority of the legislature, after which they are required to be submitted by that body to the people. In the former State, the practice has been to effect this by a joint resolution, and in the latter, by a bill; in both cases, however, combining the propositions and the clauses submitting them to the people in a single Act. In both cases, this Act is presented to the governor for his sanction. In the Constitutions of Georgia and Rhode Island, amendments are permitted to be made by the action of two successive legislatures, without submission to the people; and in neither case are the resolutions proposing the amendments presented to the Governor. In the Constitution of Missouri, authorizing amendments to be made in the same manner, the resolutions of the first legislature are presented to the Governor, and those of the second not. In the Constitution of Maine, finally, amendments may be proposed by the legislature, which are then to be submitted to the people, the Constitution itself con-

taining particular directions as to the time and mode of holding the election, and no action on the part of the legislature being requisite, except by resolution to notify the towns to vote on the proposed amendments as prescribed in the Constitution. It is the practice to present the resolutions embodying the amendments to the Governor."

It will thus be seen that there is no uniform practice in the several states in regard to the manner of submitting propositions to amend a constitution—the cases where the propositions have been submtttted to the governor being nearly as numerous as those where they were not submitted to him for his approval. In this connection it may be well to notice the fact that the first constitution of this state was passed by the legislature as an act and approved by the governor of the then territory (see General Statutes, pp. 66-67), and no objection was ever made to it on those grounds.

Considerable stress is laid on the fact that the legislature has used the formula, " Be it enacted," in passing the proposition in question, and it is said "that amendments to the constitution cannot be ' ENACTED ' or proposed by a ' bill.' " None of the provisions of the constitution relating to " bills " have any application to proposed constitutional amendments. Bouvier Law Dict., Vol. 1, 590, defines the word " enact " " to establish by law ; to perform or effect ; to decree."

If we take any of these definitions it would be of equal force to the word " resolved," the fifth definition of which given by Webster is, " To express as an opinion or determination by resolution or vote ; as, it was *resolved* by the legislature." The formula, " Be it enacted," therefore, includes the formula, " Be it resolved." In other words, the phrase " Be it enacted," while ordinarily applied to the passage of bills, may be used in passing a mere resolution or proposal. There would seem to be nothing in this ob-

jection. It will be conceded that under our constitution it is unnecessary to submit a proposition to amend the constitution, duly passed by each branch of the legislature, to. the governor for his approval, as such proposition is not ordinary legislation. Suppose, however, through mistake or a superabundance of caution it is submitted to him and he approves it, or, as in this case, retains it for more than five days, Sundays excepted, in what way does it affect the resolution? It is still but a proposition which has gained nothing from the approval of the governor; but to be of any validity it must be adopted by a majority of the electors voting at the " next election of senators and repre-- sentatives." Suppose each branch of the legislature, under a mistake as to their duty, should cause the bill or resolution to be read at large on six different days, or perform any other act in its passage not required by law, would the bill or resolution therefore be void if the acts done included all that the law requires? No one will so contend. There is a material difference between a failure to perform all that the constitution requires—as by a failure to call the yeas and nays, and the performance of more than is requisite. In the first case, if the matter in default is jurisdictional—as if less than three-fifths of each house should vote for the proposition, there would be a want of jurisdiction and the proposition would be void.

In the second case, however, if the jurisdictional facts appear and the bill or proposition "be agreed to by three-fifths of the members elected to each house," it will not be rendered invalid because more was done than necessary. No case has been cited holding that a proposition to amend a constitution in the form of a bill duly passed by the legislature and approved by the governor has been declared invalid, and the writer after a very thorough search has been unable to find any such case. The constitution does not provide the form of a proposed amendment to the constitution, and while the proper form would seem to be,

"Be it resolved," etc., it does not render any other proper formula unavailing or void. The first objection, therefore, in the brief and argument of Mr. Webster is overruled.

It is claimed that the proposed amendment is unconstitutional for the reason that it is in conflict with Sec. 22, Art. I. of the constitution, which provides that, "all elections shall be free; and there shall be no hindrance or impediment to the right of a qualified voter to exercise the elective franchise." It is said in Mr. Webster's brief, "We must consider the present document as an act of the legislature. As yet, it is no part of the constitution. Does the act, as now framed, in any of its necessary parts conflict with the existing constitution? is a proper subject of inquiry. Sec. 2 of the act provides that, 'on the ballot of each elector' there 'shall be printed or written the words':

"First—'For' the prohibitory amendment, 'or' 'against' the prohibitory amendment.

"Second—'For' the license amendment, 'or' 'against' license amendment.

"It seems clear that there must be printed or written on the ballot of each elector words FOR each of the amendments or against each of the amendments. After providing what shall be written or printed on the ballot of each elector concerning the prohibitory amendments, the section provides, 'There shall also be written or printed on the ballot of each elector' an affirmative or negative concerning the license amendment. The conclusion is, that there shall be on each ballot words FOR BOTH amendments or AGAINST BOTH amendments."

In support of this proposition the case of *Allen v. Louisiana*, 103 U. S., 84, is cited. In that case it is said, "'if they (the several parts of a statute) are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other as to warrant a belief that the legislature intended them as a whole, and that, if all could not be carried into effect, the legisla-

ture would not pass the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them.' The point to be determined in all such cases is whether the unconstitutional provisions are so connected with the general scope of the law as to make it impossible, if they are stricken out, to give effect to what appears to have been the intent of the legislature." To the same effect see *Warren v. Mayor*, 2 Gray, 84. *Taylor v. Commissioners*, 23 O. S., 84. *State v. Commissioners*, 5 O. S., 507.

An examination of the propositions in question will show that one provision is not dependent upon the other. They are independent propositions for the control of the liquor traffic, to be submitted to the electors of the state, for their approval or rejection. Both propositions relate to the same subject, viz., the control of the traffic in intoxicating drinks, but differ merely as to the remedy proposed. In effect the propositions are in the alternative and intended to give voters an opportunity to express their preference as to the mode of controlling the traffic in intoxicating drinks. To be effective but one of such propositions can be adopted and become part of the constitution. The proposed amendments, therefore, are not dependent upon each other and therefore are not in conflict with the constitution. We therefore answer the first inquiry in the affirmative.

2d. Mr. Webster in his brief contends that the proposed amendments must be submitted together—that is, an elector must vote for BOTH AMENDMENTS or against BOTH amendments. He says, p. 37: "If the legislature had intended that the elector should have the privilege of voting for one amendment and against the other, they would have used words in the alternative instead of using the words 'there shall also.' The English language is well understood, and when words are used which necessarily have a certain and well defined meaning, they must be so read and construed in interpreting a statute.

" This construction of the language of the section is corroborated by a reference to that part of the section touching the affirmative and negative ballots. The language is that there shall be written or printed 'for' the respective amendments, or there shall be written or printed words 'against' the respective amendments. In this regard the language of the section is in the alternative. It is apparent how this incongruity came into the section. As the bill first passed the senate, there was but one proposed amendment to be voted on. The language of the original senate bill was appropriate to the then existing form of the bill. The house amended the bill by adding an additional amendment to be voted upon, and by the language put into the senate bill by the house amendment, providing that an affirmative or negative as to the amendment proposed by the house should ALSO be written or printed on the ballot of each elector. The legislature drafted this bill and passed it in its present form, and this court must deal with it as it finds it. The court cannot remodel it, either in substance or form."

The proposed amendments are that, " The manufacture, sale, and keeping for sale of intoxicating liquors as a beverage are forever prohibited in this state, and the legislature shall provide by law for the enforcement of this provision." And there shall also at said election be *separately* submitted to the electors of this state, for their approval or rejection, an amendment to the constitution of this state, in words as follows: " The manufacture, sale, and keeping for sale of intoxicating liquors as a beverage shall be licensed and regulated by law."

The propositions are to be *separately* submitted. They are independent proposals, both intended to place restrictions upon the traffic in intoxicating liquors as a beverage. It is a well known fact that the unrestricted traffic in intoxicating liquors as a beverage produces destitution, misery, and crime, fills poor-houses and prisons, and indirectly

adds largely to the burdens of taxpayers. How best to control this evil has occupied the attention of wise and thoughtful persons for many years, and the inquiry is, what system will produce the best practical results? On the one hand it is claimed that in the present state of public sentiment the most effective restriction can be obtained by placing license at so high a sum that only reputable and responsible persons can engage in the business, and they under such liabilities and restrictions as to prevent sales to minors, drunkards, or to any one on Sunday or election days, or at any time in sufficient quantities to produce intoxication, and by making persons engaged in the business, and the sureties on their bonds, liable for any damages sustained by any one from the sale of intoxicating liquors. On the other hand, the opponents of license claim that the only effective mode of controlling the traffic is to prohibit it altogether. The legislature, recognizing this divided state of public sentiment, has in effect said to the electors of the state, "Choose ye which system ye will have," and hence has submitted both questions. Electors, in casting their ballots for or against a proposition are supposed to be, and as a rule are, governed by principle; hence, if one votes in favor of prohibition, it will be rare indeed that he will also vote in favor of license. So if he votes for license, he will not vote for prohibition. The proposed amendments provide for different and contradictory modes of controlling the liquor traffic, but one of which can be effective if adopted. The propositions being independent, however, an elector may vote for one and against the other, or for or against both. If both should receive a majority of all the votes cast, however, the amendments being irreconcilable, both would fail. Such a contingency is so remote that it scarcely need be considered.

3d.   The third interrogatory is answered in the reply to the second.

4th.   In answer to the fourth interrogatory, we will

56

say that no title is necessary to a proposed amendment or amendments to the constitution, and if a title has been inserted it may be treated as null and void. A proposition to amend the constitution, when adopted by the necessary three-fifths votes of all the members elected to each house, is in no sense a law. It is a mere proposal, based, it is to be presumed, upon a public demand for its submission, but it will possess no validity until ratified by a majority of all the votes cast at the election. If two or more propositions are submitted, they are to be submitted separately. There is a good reason why but one subject should be embraced in a bill designed to become a law by the action of the legislature and governor, and that the subject should be clearly expressed in the title, as without such condition experience has shown that provisions of a very objectionable character, which there was no possibility of passing independently, ' were attached to meritorious bills and smuggled through, or knowingly voted for by members to prevent the defeat of meritorious measures. In other words, as said by this court in *White v. Lincoln*, 5 Neb., 505, the object "is to prevent surreptitious legislation by incorporating into a bill obnoxious provisions which have no connection with the general object of the bill, and of which the title gives no indication." No such reasons obtain, however, in submitting a proposition to amend the constitution, and the provisions of the constitution are not applicable thereto.

Mr. Webster, in his brief, page 41, says: "Treating the whole bill as a provision for an *alternative* vote it is subject in principle to the same objections which this court made to that form of a proposition in *Jones v. Hurlburt*, 13 Neb., 125, and *Spurck v. L. N. W. R. R. Co.*, 14 Id., 293." In those cases it was held in effect that the grant was void for want of a specific grantee. In other words, that under our law, donation bonds to a railway, to be valid, must be voted to a particular party and that the

voters themselves must designate such party, otherwise there is no grant. This we think is a correct interpretation of the law, but it has no application to this case, even if we apply it to the action of the house in amending the senate bill. This right is given to either house, and is a necessary power to correct mistakes or to perfect bills or propositions. Under certain restrictions the power in passing a proposition for an amendment to the constitution is to be exercised by the legislature in such way as it may see fit, provided the proposition as amended receives at least three-fifths of all the votes in each house of the members elected thereto.

And if it is sought to apply the rule to the act of voting for one of two propositions—one of which, if approved by the electors of the state by the requisite majority, shall thereupon become a part of the constitution, then it has no application, because a majority of the voters would vote for a definite proposition.

Mr. Webster in his brief also contends that the proposed amendments were not entered on the journals as required by Sec. 1, Art. XV. of the constitution. He says: "The original Senate File 31 was entered on the journal of the senate. The bill as it passed the house seems to have been entered on the house journal. When the bill came back to the senate the amendments proposed in the house were entered on the senate journal, but the bill as amended was not entered upon the senate journal as an entirety, or in the form of a completed instrument.

"The constitution requires that the 'proposed amendments shall be entered on the journals.' This language contemplates that the proposed amendments in the completed form in which they are to be submitted to the people shall be entered at large upon the journal of each house. These journals are made the *record* of the amendments so proposed. It is to this record the people must go to find amendments submitted to them. It is entirely

unlike an act of legislation in this regard.    It evidently is
not the intent of the constitution that the proposed amend-
ments may be scattered through the journals in fragments,
"here a little and there a little." This would require a
skilled legislator to gather up the fragments and join them
together, to find out what was submitted to the people.
These amendments are proposed to the electors, made up
of men of all classes and degrees of learning, and should
appear in a form that will address itself to their common
understanding.

The journal of the senate shows that Senate File No. 31,
as it originally passed that body, is spread at length on
such journal, and the house journal shows that the bill
with the amendments made by the house are entered at
length on such journal.    And when the senate concurred
in the house amendments such amendments were spread at
length on the senate journal.    Thus the entire proposi-
tions are entered on the house journal, while the senate
journal shows the propositions two sections.    This is a
very different state of facts from that in *Koehler v. Hill*,
60 Iowa, 543, where Judge Beck in the dissenting opinion
says: "The original resolution and the several amend-
ments were all entered at length when each was offered in
the respective houses; but after the adoption of the amend-
ments the resolution was not transcribed in its proper form
as it appeared after the amendments.    The resolution is
more than once entered in the journal of each house by its
title, and by brief statements of its purpose and effect."

The same question was before the supreme court of
Kansas in the prohibitory amendment cases, 24 Kas., 110,
where the proposed amendments had not been spread at
length on the journals of the respective houses.    The
court, by Brewer, J., say: "Is a proposition to amend the
constitution in the nature of a criminal proceeding, in
which the opponents of change stand as defendants in a
criminal action, entitled to avail themselves of any techni-

cal error, or mere verbal mistake; or, is it rather a civil proceeding in which those omissions and errors which work no wrong to substantial rights are to be disregarded? Unhesitatingly, we affirm the latter. The central idea of Kansas law, as of Kansas history, is, that substance of right is grander and more potent than methods and forms. The two important, vital elements in any constitutional amendment, are the assent of two-thirds of the legislature, and a majority of the popular vote. Beyond these, other provisions are mere machinery and forms. They may not be disregarded because, by them, certainty as to the essentials is secured. But they are not themselves the essentials. Take a strong illustration: the constitution requires that the 'secretary of state shall cause the same to be published in at least one newspaper in each county of the state where a newspaper is published, for three months preceding,' etc. Suppose a unanimous vote of both houses of the legislature, and a unanimous vote of the people in favor of a constitutional amendment, but that the secretary had omitted to publish in one county in which a newspaper was published, would it not be simply an insult to common sense to hold that thereby the will of the legislature and people had been defeated? Is it within the power of the secretary, either through ignorance or design, to thwart the popular decision? Is he given a veto, or can he create one? This may be an extreme case, but it only illustrates the principle. The records of the proceedings of the two houses are made, not by the houses themselves, but by clerical officers. True, they are under the control of the respective houses, but in fact the records are made by clerks. May they defeat the legislative will? The constitution does not make amendments dependent upon their approval or their action. To insure certainty and guard against mistake, journal evidence of the amendment and votes is prescribed, but this is mere matter of evidence, and not the substantial condition of constitutional change."

The case cited from Kansas seems to state the law correctly, and has our approval. The case at bar, however, is much stronger than the one cited. The maxim of the law is, " *Id certum est quod certum reddi potest.*" That is certain which may be rendered certain. 2 Blackstone Com., 143. 4 Kent Com., 462. This maxim is constantly applied in the construction of instruments affecting the title and possession of real estate and other matters of importance, and is appliable to a proposition to amend the constitution. The journals of both houses show that the identical propositions now before us were duly passed by both houses, and are entered on the journals of the respective houses with the yeas and nays, the only objection being that in the senate journal the proposition as amended by the house is not entered at length in one place. This, in our view, is not fatal to its validity.

There is another reason why the court will not declare the propositions invalid. because not entered at length on the senate journals. The legislature is still in session, and each house has complete control of its journals during the session to amend or correct the same to conform to the facts.

Upon the whole cause, there is nothing in the propositions in conflict with the constitution, or that renders them invalid.

THE other judges concur.