## WILSON and others *v.* SPAULDING, Collector.

*(Circuit Court, N. D. Illinois.   January 22, 1884.)*

1. MISTAKE IN STATUTE—INTERPRETATION—LEGISLATIVE INTENT.

   An act of congress, approved August 7, 1882, purports by its title to correct an error in section 2504 of the Revised Statutes; but in the body of the act the clause to be corrected is quoted as a part of "schedule M of section 25." Section 25 contains no schedule M, and bears upon an entirely different subject, and the language quoted is found in schedule M of section 2504. *Held,* that the act corrects section 2504.

2. STATUTE—TITLE.

   The title of an act may be resorted to by the court for the purpose of elucidating what is obscure in the provisionary part.

3. CUSTOMS DUTIES—WOOLEN KNIT GOODS.

   Certain woolen knit goods *held* dutiable under schedule L, and not under schedule M, as corrected by the act of August 7, 1882.

At Law.

*Storck & Schumann,* for plaintiffs.

*Gen. Jos. B. Leake,* for defendants.

BLODGETT, J.   This suit is brought to recover duties paid by the plaintiffs, under protest, to the defendant, as collector of customs of the port of Chicago, upon certain woolen knit goods, shirts, and drawers imported by plaintiffs in September, 1882.   The goods in question were charged with duty at the rate of 40 cents per pound, and 35 per cent. *ad valorem,* under the twelfth paragraph of class 3, schedule L, § 2504, which reads as follows:

"Flannels, blankets, hats of wool, knit goods, balmorals, woolen and worsted yarn, and all manufactures of every description, composed wholly or in part of worsted, the hair of the Alpaca goat, or other like animal, except such as are composed of wool, not otherwise provided for, valued at not exceeding forty cents per pound, twenty cents per pound; valued at above forty cents per pound and not exceeding fifty cents per pound, thirty cents per pound; valued at above sixty cents per pound and not exceeding eighty cents per pound, forty cents per pound; valued at above eighty cents per pound, fifty cents per pound; and, in addition thereto, upon all the above-named articles, thirty-five per centum *ad valorem.*"

The only question in this case is whether the act of congress, approved August 7, 1882, entitled "An act to correct an error in section 2504 of the Revised Statutes of the United States," is applicable to and amends schedule M of said section 2504?   By its title this act purports to amend section 2504, but the body of the first paragraph of the act reads as follows:

"The paragraph beginning with the words, 'clothing, ready-made, and wearing apparel,' under schedule M of section twenty-five of the Revised Statutes of the United States, be and the same is hereby amended by the insertion of the word 'wool' before the word 'silk' in two places where it was omitted in the revision of the said statute, so that the same shall read as follows:"

Then follows the paragraph as it would read when amended.

By the letter of the body of this act, it is an amendment of section 25 of the Revised Statutes. The subject-matter of section 25 *is the* time of holding the election for representatives and delegates to congress in the states and territories; while the subject-matter of this amendment is the rate of custom duties to be levied on certain kinds of imported goods. It is apparent from the reading that there is a mistake in the body of the act as to the section of the Revised Statutes it was intended to amend, it being clear that it was not the purpose of congress to amend section 25. The incorporation of this new matter into section 25 would not only be incongruous to the purpose of the original section, but it would be practically impossible to fit or adjust the new matter to the provisions of section 25, because there is no schedule M in section 25. The question is, can the court apply this act and make it operative, notwithstanding this obvious mistake? It is the duty of the court to so construe any act of congress, if possible, as to effectuate the intention of the legislature in enacting it, when that intention can be ascertained from the act itself. Now, it is clear from the body of the act that congress did not intend to amend section 25, and it is equally clear that the intention was to amend some section of the Revised Statutes regulating duties to be paid on imported goods, and an examination of the sections of the Revised Statutes regulating the duties on imported goods shows that section 2504 not only has reference to the duties on imported goods, but it contains a series of schedules identified by letters of the alphabet, among which is "schedule M," and as far as I have been able to find by such brief examination as my time would permit, this is the only section in the entire Revised Statutes which contains a "schedule M." We find also in this schedule a paragraph beginning with the words, "Clothing, ready-made, and wearing apparel," and corresponding in every particular with the paragraph which the act in question purports to amend by the insertion of the word "wool" before the word "silk" in two places. In other words, insert the word "wool" in two places before the word "silk" in the paragraph of schedule M, § 2504, and you make a new paragraph, which reads exactly as the act provides this paragraph in schedule M of section 25 shall read when amended.

But we are not left to the body and subject-matter of this act of 1882 alone to determine the intention of congress in enacting it. The title of the act is, "An act to correct an error in section *twenty-five hundred and four* of the Revised Statutes of the United States." It is urged, however, by counsel for complainant that the title is no part of the act. The use which may be made of the title in construing an act of congress is, I think, well settled by a line of uniform decisions in the supreme court. In *U. S.* v. *Fisher,* 2 Cranch, 358, that court, speaking by Chief Justice MARSHALL, said:

"On the influence which the title ought to have in construing the enacting clauses much has been said, and yet it is not easy to discover the point of

difference between the opposing counsel in this respect. Neither party contends that the title of an act can control plain words in the body of a statute; and neither denies that, taken with other parts, it may assist in removing ambiguity. Where the intent is plain there is nothing left to construction. When the mind labors to discover the design of the legislator it seizes everything from which aid can be derived, and, in such case, the title claims a degree of notice, and will have its due share of consideration."

So the same learned judge said in *U. S.* v. *Palmer*, 3 Wheat. 610:

"The title of an act cannot control its words, but may furnish some aid in showing what was in the mind of the legislator."

And in *Hadden* v. *Collector*, 5 Wall. 107, Mr. Justice FIELD, speaking for the court, said:

"The title of an act furnished little aid in the construction of its provisions. Originally, in the English courts, the title was held to be no part of the act. 'No more,' says Lord HOLT, 'than the title of a book is part of a book.' It was generally framed by the clerk of the house of parliament where the act originated and was intended only as a means of convenient reference. At the present day the title constitutes a part of the act, but it is still considered as only a formal part; it cannot be used to extend or restrain any positive provisions contained in the body of the act. It is only when the meaning of these are doubtful that resort may be had to the title, and even then it has little weight."

These authorities seem to fully sustain the right of the court to look at the title for the purpose of ascertaining the intent of congress, when the intent is doubtful or obscure from the body of the act. While, from the body of this act, read in connection with section 25, it is very clear that it was not the intent of congress to amend that section, yet it may be said to be doubtful from the body of the act itself what section it was intended to amend; but reading the body of the act and the title together, there can be no question what section the act is applicable to. I am therefore of opinion that the act of August 7, 1882, is an operative law, and was intended to amend and does amend schedule M of section 2504, so as to throw the goods in question into the twelfth paragraph of the third class of schedule L.

On argument, reference was made to the proceeding of the senate at the time the act in question passed for the purpose of showing that the omission of the words "hundred and four" from the first paragraph of the body of the act was not a mistake, but that attention was called to the omission. The debate on the bill as reported in the Congressional Record shows that on the last day of the session the bill came up for action in the senate, having passed the house, and some senators who would seem to have wished to defeat the bill insisted on amending it by inserting the words "hundred and four," so that it would read section 2504, but the friends of the bill believing that the effect of an amendment at that stage of the session would be to defeat the measure, insisted that an amendment was not necessary; that it was sufficiently apparent what part of the Revised Statute was to be affected by the proposed act; and that the executive officers and the courts would properly construe and apply it. This

citation of the debate in the senate only proves that the senators—that is, the majority who passed the bill—did not deem it ambiguous or incapable of application.

The issue is found for the defendant.