## LOVETT V. FERGUSON.

1. Const. Art. 3, § 19, provides that the presiding officer of each house shall sign all bills and joint resolutions "after the titles have been publicly read," and the fact of signing shall be entered on the journal. *Held,* that, though the constitution does not require a joint resolution to have a title, it presupposes it will have one; and, where the title to a joint resolution is adopted after due consideration, it may be referred to and considered by the court for the purpose of ascertaining the intention of the two houses in adopting the resolution, if there is doubt as to what that intention was.

2. Laws 1895, Chap. 38, is: "House Joint Resolution proposing an amendment to the constitution—A joint resolution to amend the constitution

of the state of South Dakota by repealing Article 24 thereof, relating to prohibition, and submitting the same to a vote of the people. Be it resolved by the house of representatives of the state of South Dakota, the senate concurring: Section 1. (Question submitted.) That at the general election to be held in the state of South Dakota on the first Tuesday after the first Monday in November, 1896, there shall be submitted to a vote of the qualified electors of the state of South Dakota the following question: 'Shall Article 24 of the constitution be repealed?'" *Held*, that such joint resolution, read in connection with the title, shows that an amendment to the constitution by striking out Article 24, relating to prohibition, was proposed and agreed to by the two houses, as required by Const. Art. 23, § 1, relating to amendments, which does not prescribe any particular form in which the two houses shall proceed in proposing, agreeing to, or submitting to the people an amendment; and the resolution is not open to the objection that the only proposition agreed to was as to the submission to the people of the question, "Shall Article 24 of the constitution be repealed?"

3. The manner in which the question of the proposed amendment was submitted to the people was sufficient, and not misleading, though somewhat informal, under Laws 1895, Chap. 86, § 1, providing that a proposed amendment shall be followed by the words: "Shall the above amendment to the constitution be approved and ratified?"

4. Since the proposition was not to add anything to the constitution, but simply to strike out an article without adding or substituting anything in its place, the proceedings to effect the amendment are not assailable on the ground that if the proposition, "Shall Article 24 of the constitution be repealed?" as voted on by the electors, be added to that instrument, it would not have the effect to change or amend it.

5. Proceedings to amend the constitution are not invalidated because the proposed amendment is not "printed upon each ticket on the ballot," as required by laws 1895, Chap. 86, all the other steps being as required by law.

(Opinion filed May 26, 1897.)

Appeal from circuit court, Hughes county. Hon. LORING E. GAFFY, Judge.

Action to recover for intoxicating liquors sold to defendant. From an order sustaining a demurrer to the answer, defendant appeals. Affirmed.

*S. H. Cranmer*, for appellant.

The title and the enacting clause of the proposed amendment are without any binding force and add nothing to the

resolution.　*In re* Senate File No. 31, 41 N. W. 981; Hart v. Mayor, 24 Am. Dec. 165; Sutherland v. DeLeon, 46 Am. Dec. 100.　Constitutional provisions are always mandatory.　Cooley Const. Lim. (4th Ed.) 182, 183; Hunt v. State, 3 S. W. 233; State v. Tfly, 12 Pac. 835; Collier v. Frierson, 24 Ala. 100; Field v. People, 2 Scam. 219; State v. McBride, 4 Mo. 303; State v. Swift, 69 Ind. 518; Koehler v. Hill, 14 N. W. 738 and 15 Id. 600.　The proposed amendment should have been printed upon each ticket on the ballot.　Chap. 86, Laws 1895.

*Albert Gunderson,* for respondent.

*Horner & Stewart,* as *amici curiæ,* made oral argument and filed a brief in support of the amendment.

Where legislative journals are silent, the court will presume that the requisite action on the part of the legislature was regularly and legally taken.　Cooley Const. Lim. 164.　When the constitution is silent, the legislature is the sole judge as to the mode and manner and the machinery and procedure in and by which it shall act.　Jamieson on Constitutional Conventions. *In re* Senate File No. 31, 41 N. W. 981; State v. Gray, 19 L. R. A. 134.　The act of submission presupposes the agreement of the legislature thereto.　*In re* Senate File No. 31, *supra; In re* Prohibitory Amendment, 24 Kans. 700; Edwards v. Leseuer, 33 S. W. 1130.　The law requiring the proposed amendment to be printed upon each ticket was superseded and repealed by the act approved March 12, 1895 (Laws 1895, Chap. 87).

The title to a joint resolution is recognized by the constitution itself and should be considered in arriving at the intention of the legislature.　§ 19, Art. 3, Const.

The legislative and executive departments of the state have recognized the validity of the proceedings to amend the constitution.　While not controlling contemporaneous, executive and legislative construction and interpretation, should have great weight with the decision of this court.

Corson, P. J.　This was an action for the recovery of the purchase price of intoxicating liquors sold by plaintiff to the

defendant since March 3, 1897. The answer sets up, in effect, that the contract was illegal and void, being made in violation of Article 24 of the constitution and the laws enacted to carry the same into effect. A demurrer was interposed to the answer upon the ground that the same did not state facts sufficient to constitute a defense to the action. This demurrer was sustained by the circuit court, and the defendant appeals.

The demurrer was evidently sustained by the court upon the theory that the proceedings taken to amend the constitution by the two houses of the legislature at its session in 1895, and the vote of the people had thereon at the general election held in November, 1896, were valid, and had the effect of amending that instrument, by striking therefrom the said article. The joint resolution adopted by the two houses of the legislature reads as follows:

House Joint Resolution proposing an amendment to the consti-
tution—A Joint Resolution to amend the constitution of the state of South Dakota by repealing Article 24 thereof, relating to prohibition, and submitting the same to a vote of the people.

"Be it resolved by the house of representatives of the state of South Dakota, the senate concurring:
Section 1. (Question Submitted.) That at the general election to be held in the state of South Dakota on the first Tuesday after the first Monday in November, 1896, there shall be submitted to a vote of the qualified electors of the state of South Dakota the following question: 'Shall article twenty-four of the constitution be repealed?'"
Laws 1895, Chap. 38.

The important question therefore presented for our decision in this case is: Were the proceedings taken by the two houses of the legislature and the people to amend the constitution of this state, by striking therefrom Article 24, entitled "Prohibition," valid, and was the constitution amended by striking therefrom that article? Two methods are provided

for amending the constitution of this state, only one of which, being Sec. 1, Art. 23, need be noticed. That section reads as follows: "Any amendment or amendments to this constitution may be proposed in either house of the legislature, and, if the same shall be agreed to by a majority of the members elected to each of the two houses, such proposed amendment or amendments shall be entered on their journals, with the yeas and nays taken thereon, and it shall be the duty of the legislature to submit such proposed amendment or amendments to the vote of the people at the next general election. And if the people shall approve and ratify such amendment or amendments by a majority of the electors voting thereon, such amendment or amendments shall become a part of this constitution; provided, that the amendment or amendments so proposed shall be published for a period of twelve weeks previous to the date of said election, in such manner as the legislature may provide; and, provided, further, that if more than one amendment be submitted, they shall be submitted in such manner that the people may vote for or against such amendment separately." It is contended by respondent that the proceedings taken by the two houses of the legislature at its session in 1895, followed by the vote of the electors, approving and ratifying the same, at the election held in November, 1896, resulted in amending the constitution, by striking therefrom this article. The validity of these proceedings, however, is challenged by the appellant upon five grounds: (1) That no definite amendment of the constitution was proposed; (2) that no proposed amendment was agreed to by the two houses of the legislature; (3) that the proposition upon which the members of the two houses voted was not the same proposition upon which the people voted; (4) that the question which was submitted, if added to the constitution, would in no way change or amend the same; (5) that the proposed amendment was not printed upon each ticket on the ballot as provided by Sec. 1, Chap. 86, Laws 1895.

The two essential elements of an amendment to the constitution under the provisions of Sec. 1, above quoted, are (1)

that a majority of the two houses shall have agreed to the proposed amendment, and (2) that the people shall have approved and ratified the same by their votes.   The other provisions prescribe the manner generally in which the essential acts shall be performed.   It is well settled that provisions of a constitution, while mandatory, are, like statutes, to receive a fair and reasonable construction, with the view of ascertaining the intention of the two houses of the legislature and the people in their proceedings taken to affect an amendment; and it is the duty of courts, when that intent is ascertainable from the proceedings taken, to carry it into effect.   The action of the two houses and the will of the people, as expressed by their vote, should not be set aside or disregarded upon purely technical grounds, when no material requirement of the constitution has been omitted, and where the proceedings taken clearly manifest the intention of those bodies and the people to amend the fundamental law.   It will be observed from the reading of Sec. 1, above quoted, that no particular form in which the two houses shall proceed in proposing, agreeing to, or submitting an amendment to the people is prescribed.   The method of proceeding is left largely to the discretion of the two houses, subject to the condition that all requirements of the constitution shall be substantially complied with.   These requirements are: (1) That the amendment be proposed in one of the two houses, but in what manner is not prescribed.   (2) It must be agreed to by a majority of the members elected to each of the two houses. (3) It must be entered upon the journals of the two houses with the yeas and nays taken thereon.   (4) It must be submitted to a vote of the people at the next general election.   (5) The amendment must be published substantially as prescribed. (6) Each amendment must be so submitted that it can be voted upon separately.

It is contended by appellant that, independently of the title to the resolution there is nothing in the proceedings to show that an amendment was proposed or agreed to.   It is further

contended that as no title is required to a joint resolution, the title cannot be referred to, to explain or supply any defect in the resolution itself. It is true that the constitution of this state does not in terms require that a joint resolution shall have a title, but it presupposes that such a resolution will have a title. Sec. 19, Art. 3, provides: "The presiding officer of each house shall * * * sign all bills and joint resolutions * * * after the titles have been publicly read, * * * and the fact of signing shall be entered upon the journal." If, therefore, a title is not absolutely required, it is fully recognized by the constitution. In the early English decisions the courts held the title to be no part of the statute, and it was said the title could never be referred to as affording any indication of the interpretation to be given to the act. This rule was adopted upon the theory that the title was usually framed by the clerk of parliament after the bill had passed, without any vote being taken upon it; but, under the constitution of this and many of the other states, it is now necessarily a part of the act itself, and is a very important guide to its rightful construction. Eby's Appeal, 70 Pa. St. 314; Halderman's Appeal, 104 Pa. St. 259; Coosaw Min. Co. v. South Carolina, 144 U. S. 550, 12 Sup. Ct. 689; Wilson v. Spaulding, 19 Fed. 304. See, also, 23 Am. & Eng. Enc. Law, 327, 328, and numerous cases cited. While it is true that the cases cited refer to statutes generally, we think they may with equal force be applied to a joint resolution adopting an amendment to the constitution, where the title is framed by a committee of the legislature, and adopted by the two houses upon full consideration. Such will be seen by the proceedings was the method followed in this case. When, therefore, the title to a joint resolution is adopted after due consideration, it may be referred to and considered by the court for the purpose of ascertaining the intention of the two houses in adopting the resolution, if there is any doubt as to what that intention was. The effect of a title to a bill is well illustrated in Wilson v. Spaulding, *supra.* In that case in the body of the

act, the section to which the proposed amendment related was designated as Section 25, but in the title it was designated as 2504, and the court says: "These authorities seem to fully sustain the right of the court to look at the title for the purpose of ascertaining the intent of congress, when the intent is doubtful or obscure from the body of the act. While, from the body of this act, read in connection with Section 25, it is very clear that it was not the intent of congress to amend that section, yet it may be said to be doubtful from the body of the act itself what section it was intended to amend; but, reading the body of the act and the title together, there can be no question what section the act is applicable to. I am therefore of the opinion that the act of August 7, 1882, is an operative law and was intended to amend, and does amend, Schedule M of Section 2504, so as to throw the goods in question into the twelfth paragraph of the third clause of Schedule L." We can see no reason why the same principle should hot apply to a joint resolution. Reading, therefore, the resolution in connection with the title, the fact that the amendment was proposed and agreed to by two houses seems to be placed beyond question. But in the case at bar the two houses evidently assumed that, in submitting the proposed amendment to the people, they were thereby agreeing to the proposed amendment, and, in this assumption, they followed substantially the same proceedings as taken in Nebraska *(In re* Senate File 31, 41 N. W. 981, 25 Neb. 864), and in Kansas (Prohibitory Amendment Cases, 24 Kan. 700), which states have provisions for amending their constitutions substantially the same as those found in the constitution of this state.

*In re* Senate File 31, *supra,* the proposed amendment was agreed to and submitted in the following form:

"A bill for an act to submit to the electors of the state, for rejection or approval, an amendment to the constitution of the state to prohibit the manufacture, sale and keeping for sale of intoxicating liquors as a beverage, and providing for the manner of voting on such amendment. * * *

"Be it enacted by the legislature of the state of Nebraska:

"Section 1. That at the general election to be held on Tuesday succeeding the first Monday of November, A. D. 1890, there shall be submitted to the electiors of this state, for approval or rejection, an amendment to the constitution of this state in words as follows:"

And in the Prohibitory Amendment Cases, *supra*, the proposed amendment was submitted in the following form, as stated in the opinion of the court: "The joint resolution, as it appears in the statutes of 1879, reads as follows: 'Section 1. The following proposition to amend the constitution of the state of Kansas shall be submitted to the electors of the state, for adoption or rejection at the general election to be held on Tuesday succeeding the first Monday of November, A. D. eighteen hundred and eighty.' * * * The original document with the endorsements of the officers of the two houses and the signature of the governor, is in the office of the secretary of state, and is as published."

A careful examination of these cases discloses the fact that in neither of them does it affirmatively appear that the two houses agreed to the proposed amendment in any other manner than by agreeing to submit the proposed amendment to the people by the required constitutional majority; yet in neither of them was it questioned that the proposed amendment was properly agreed to by the two houses.

A few extracts from the house journal will show the manner in which the houses proceeded in adopting and submitting the proposed amendment:

"House Journal.

"January 10th, 1895. Mr. Russell introduced House Joint Resolution No. 7: A Bill for an act repealing Article 24 (Prohibition) of the constitution.

"January 11th, 1895. House Bill No. 7, a bill for an act repealing Article 24 (Prohibition) of the constitution, was read the second time and referred to the committee on temperance

"January 15th, 1895. The committee on temperance submitted the following majority report: 'The committee on temperance respectfully report that they have had under consideration House Joint Resolution No. 7, a joint resolution proposing an amendment to the constitution, and return the same with recommendation that said joint resolution be amended by changing the title thereof so as to read as follows: 'A joint resolution to amend the constitution of the state of South Dakota by repealing Article XXIV thereof, relating to prohibition, and submitting the same to a vote of the people, and by omitting from said resolution sections No. 2 and 3 thereof; and that the resolution as herein amended do pass.'" Four members of the committee submitted a minority report, with the 'recommendation that the bill do not pass.' Thereupon the following proceedings were had: Mr. Donahue moved that the majority report be adopted. Mr. Gold moved that the minority report be substituted for the majority report, and adopted. Roll call was demanded, the question being upon the motion to substitute the minority report for the majority report and the adopting of the same. The roll being called there were yeas, 31; nays, 49; absent and not voting, 3. * * * Mr. Gold called for a verification of the roll, which was had. A majority having voted in the negative, the motion to substitute was lost. The question then recurred upon the motion to adopt the majority report of the committee, which motion prevailed. * * * House Joint Resolution No. 7 repealing Article 24 (Prohibition) of the constitution, was read the third time, and placed upon its final passage; the question being, 'Shall the joint resolution pass?' The roll being called, there were yeas, 49; nays, 31; absent and not voting 3. * * * So, the joint resolution having received the affirmative votes of a majority of all the members elect, Mr. Speaker declared the joint resolution passed, and its title was agreed to, and, as passed, was ordered spread at length upon the journal of the house, as follows."

The resolution as spread upon the records is the same as published in the laws of 1895, and heretofore given. The pro-

ceedings in the senate being quite similar to those in the house it will not be necessary to copy from the senate journal.

No one, we think, can read these proceedings without arriving at the conclusion that the two houses agreed to the proposed amendment to the constitution by striking therefrom Article 24. This court will not presume that the legislative department of the government would attempt to submit to the vote of the people a proposed amendment to the fundamental law, which they themselves had not agreed to, or go through the idle ceremony of submitting an amendment to the people merely to obtain an expression of their views upon the question submitted. Such an assumption or presumption would be to impute to a co-ordinate branch of the government either gross ignorance or the deliberate intention of deceiving the people. The two houses having treated the amendment as one proposed to the constitution, and submitted the same to a vote of the people, they must be conclusively presumed to have agreed to it, as the same could only have been legally submitted after being agreed to. The contention, therefore, that the only proposition agreed to was as to the submission to the people of the question "Shall Article twenty-four of the constitution be repealed?" is exceedingly hypercritical and technical, when viewed in the light of the proceedings as found in the journals of the two houses. These proceedings, though unartistic and lacking in that precision that should characterize proceedings taken to amend the constitution, are, nevertheless, sufficient to clearly show that the intention of the two houses was to agree to the amendment proposed.

The further objection is made that the question of the proposed amendment was not properly submitted to the people. The form in which it was submitted, and in which it appeared upon the ballot, resulted from a change made in the statute subsequently to the adoption of this resolution by the two houses. Sec. 1, Chap. 86, Laws 1895, provides that a proposed amendment to the constitution shall be followed by the words "Shall

the above amendment to the constitution be approved and ratified?" This, with the resolution, rendered the form of the submission somewhat informal, but caused no ambiguity or uncertainty. The proposition, "Shall article twenty-four of the constitution be repealed?" and the proposition, "Shall the above amendment be ratified?" etc., would both be answered by the elector in the affirmative by making the cross in the square to the left of "Yes" or in the negative by making the cross to the left of "No." The form of the submission could not have misled the voters, as they must have fully understood the questions submitted. It is a matter of common knowledge that, during the 18 months preceding the election, the question of this amendment was the subject of general discussion by the press, in the churches, and upon the platform, and there could have been but very few persons, if any, who did not fully comprehend the nature of the amendment and the effect of a yes or no vote. The mere informality, therefore, of the method in which the question was submitted, should not defeat the will of the people, where it is clearly apparent, as in this case that the electors have not been deprived of any substantial right.

Again, it is contended that if the proposition, "Shall Article twenty-four of the constitution be repealed?" as voted on by the electors, be added to that instrument, it would not have the effect to change the constitution or amend it. But the proposition was not to add anything to the constitution, but simply to strike out an article, and nothing was to be added or substituted in its place. The two houses having agreed to strike out this article, and the people having approved and ratified the same, a majority of the members of each branch of the legislature and a majority of the electors agreed to do precisely the same thing, namely, to strike out that article.

The last proposition that we shall consider is, that the proposed amendment was not printed on each ticket on the ballot. Chap. 86 of the Laws of 1895 provides for the amendment of

certain sections of former laws, so as to require a proposed amendment to the constitution "to be printed upon each ticket on the ballot." This act was approved March 11, 1895. On the following day an act (now Chap. 87 of the laws of 1895) was passed, by which it was provided that "whenever the secretary of state has duly certified to the county auditor any question to be submitted to a vote of the people, the county auditor shall have printed on the regular ballots the question in such form as will enable the electors to vote upon the question presented." It is claimed by the respondent that this section is inconsistent with Sec. 1 of Chap. 86, and therefore repeals that section, it having been approved one day after Chap. 86 was approved. We do not deem it necessary to pass upon the question at this time, as we are of the opinion that, assuming that Chap. 86 was not repealed by Chap. 87, the failure to have the proposed amendment printed upon each ticket does not invalidate the amendment. The failure of the proper officer to do an act required of him, when such failure did not in effect tend to prevent the voters from exercising their rights as electors, should not defeat the will of the people. The question of how far technical omissions of officers charged with minor duties relating to a proposed amendment affect the validity of the proceedings was fully considered by the supreme court of Kansas in the Prohibitory Amendment Cases, *supra*, and that court, speaking by Mr Justice BREWER, says: "But this only brings us to the real question in this case: Is the proposition to amend the constitution in the nature of a criminal proceeding, in which the opponents of the change stand as defendants in a criminal action, entitled to avail themselves of any technical error, or mere verbal mistake; or is it rather a civil proceeding, in which those omissions and errors which work no wrong to substantial rights are to be disregarded? Unhesitatingly we affirm the latter. The central idea of Kansas law * * * is that substance of right is grander and more potent than

methods and forms. The two important, vital elements in any constitutional amendment are the assent of two-thirds of the legislature, and a majority of a popular vote. Beyond these, other provisions are mere machinery and forms. They may not be disregarded, because, by them, certainty as to the essentials is secured. But they are not themselves the essentials." The learned judge illustrated this proposition by supposing that the secretary of state had omitted to publish the proposed amendment in some one of the several counties of that state in which a newspaper was published (as he was required to do in that state), and then says, · "Would it not simply be an insult to common sense to hold that thereby the will of the legislature and the people had been defeated?" This decision, though severely criticised by the learned counsel for appellant, was cited with approval by the supreme court of Nebraska, *supra*, and by the supreme court of Missouri, in Edwards v. Lesaur, 33 S. W. 1131. We are of the opinion, therefore, that the omission to print the proposed amendment upon each ticket by the secretary of state, if the law as claimed by the appellant was in force, would not constitute such a fatal defect in the proceedings as to render them invalid. In fact, it is somewhat difficult to discover in what manner the printing of the amendment two, three, or four times on the ballot could possibly benefit the electors. We are of the opinion, therefore, that, notwithstanding the proceedings upon this proposed amendment were somewhat informal, the two houses of the legislature and the people have fully exercised the powers vested in them by the constitution, and have declared substantially in the manner prescribed by the fundamental law that Article 24 should no longer constitute a part of the constitution of this state.

As the article under consideration had been stricken from the constitution, and the laws enacted to carry the same into effect had been repealed prior to the time of the alleged sale, the answer contains no defense to the action, and the court ruled correctly in sustaining the demurrer. The order, therefore, sustaining the demurrer is affirmed.