## COONEY *v.* FOOTE.

1. Art. 3, sec. 7, par. 8, of the constitution of Georgia, which provides that "No law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof," applies to legislation which the General Assembly may finally pass, and has no reference to proposals to amend the constitution. The legislative proposal of 1912 to amend art. 6, sec. 7, par. 1, of the constitution is not invalid on account of any collision with art. 3, sec. 7, par. 8, of that instrument.

2. Neither is the proposal of 1912 repugnant to art. 3, sec. 7, par. 17, of the constitution, which declares that "the amending or repealing act shall distinctly describe the law to be amended or repealed, as well as the alteration to be made."

3. The formula prescribed by the proposal of 1912 as indicative of the elector's approval or disapproval of the proposed amendment was intended (and was sufficient for that purpose) as an expression of assent or dissent to the whole amendment.

NOVEMBER 11, 1914.

The Court of Appeals certified to the Supreme Court the following questions (Case No. 5574): Is the act of the General Assembly of 1913, "to carry into effect in the City of Atlanta the provisions of the amendment to paragraph 1 of section 7 of article 6 of the constitution, ratified October 2d, 1912, relating to the abolition of justice courts . . in certain cities," and "in pursuance thereof to abolish all justice courts . . in the City of Atlanta, Georgia, and to establish in lieu thereof the Municipal Court of Atlanta in the City of Atlanta," etc. (Georgia Laws, 1913, p. 145), ineffectual to confer upon the Court of Appeals jurisdiction of this writ of error, because the act of the General Assembly of 1912 (Ga. L. 1912, p. 30), proposing the said amendment to the constitution, is invalid, or ineffectual to authorize such writs of error, for any of the following reasons?

1. That the said act of 1912 is repugnant to article 3, section 7, paragraph 8, of the constitution, which provides that "No law or

ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof;" because: in its title this act purports to amend only the paragraph of the constitution which provides that "there shall be in each militia district one justice of the peace," while in the act it is sought to change other parts of the constitution, e. g., article 6, section 2, paragraph 9, which defines the jurisdiction of the Court of Appeals as to writs of error; article 6, section 2, paragraph 5, which defines the jurisdiction of the Supreme Court as to writs of error; article 6, section 4, paragraph 5, which vests in the superior courts power to correct errors in inferior judicatories, by writ of certiorari; article 6, section 4, paragraph 6, which confers on the superior and city courts power to grant new trials; article 6, section 9, paragraph 1. The last-mentioned paragraph is referred to in the body of the act as follows: "Any court so established shall not be subject to the rules of uniformity laid down in paragraph 1 of section 9 of article 6 of the constitution of Georgia," while no reference either to this paragraph or to its subject-matter is made in the title of the act. In the body of the act provision is made for "new trials and the correction of errors in and by said courts," and further provision is made "for the correction of errors by the superior court, or the Court of Appeals, or the Supreme Court, as the General Assembly may from time to time in its discretion provide or authorize," while the title does not expressly refer to new trials, and that part of the title which refers to the correction of errors is in the following words: "the correction of errors in and by said courts, by the superior, or Supreme Court, or Court of Appeals." Do these words of the title, as to correction of errors, include correction by the courts committing the errors, or do they refer only to correction by the superior court, or the Supreme Court, or the Court of Appeals? Do the provisions as to correction of errors and other provisions of the act relate to more than one subject-matter? Does the word "ordinance," as used in article 3, section 7, paragraph 8, of the constitution, supra, refer to any other than an act amending the constitution?

2. Is the said act of 1912 repugnant to the provision of the constitution that "the amending or repealing act shall distinctly describe the law to be amended or repealed, as well as the alteration to be made?" Article 3, section 7, paragraph 17.

3. The said act of 1912 provides that "All persons voting at said election in favor of adopting the said proposed amendment to the constitution shall have written or printed on their ballots the words, "for ratification of amendment to article 6, section 7, of the constitution, authorizing the establishment of other courts in certain cities in lieu of justice courts." Have the people voting in this form voted for ratification of all the provisions of the act, or only for ratification of those provisions of the act which authorize the establishment of other courts in certain cities in lieu of justice courts?

*Bryan & Middlebrooks* and *Guy W. Parker,* for plaintiff in error. *A. E. Wilson,* contra.

Briefs on the constitutional questions, by *Walter McElreath, L. Z. Rosser, Marion Smith, Spencer R. Atkinson, Shepard Bryan,* and *W. H. Terrell.*

EVANS, P. J. The General Assembly in 1912 (Acts 1912, p. 30) proposed a constitutional amendment to art. 6, sec. 7, par. 1, of the constitution of this State by adding thereto a provision "that the General Assembly may, in its discretion, abolish Justice Courts and the office of Justice of the Peace and of Notary Public ex-officio Justices of the Peace in any City of this State having a population of over twenty thousand, except the City of Savannah, and establish in lieu thereof such Court or Courts or system of Courts as the General Assembly may in its discretion deem necessary, conferring upon such new Court or Courts or system of Courts, when so established, the jurisdiction as to subject-matter now exercised by Justice Courts and by Justices of the Peace and Notaries Public ex-officio Justices of the Peace; together with such additional jurisdiction, either as to amount or subject-matter, as may be provided by law, whereof some other Court has not exclusive jurisdiction under this Constitution; together also with such provisions as to rules and procedure in such Courts, and as to new trials and the correction of errors in and by said Courts, and with such further provisions for the correction of errors by the Superior Court, or the Court of Appeals, or the Supreme Court, as the General Assembly may from time to time, in its discretion, provide or authorize. Any Court so established shall not be subject to the rules of uniformity laid down in Paragraph 1 of Section 9 of Article 6 of the Constitution of Georgia." This amendment was submitted to the people at

a general election, and was proclaimed by the Governor as having been adopted as the result of the election. Subsequently a municipal court for the City of Atlanta was created; and it was provided that from the judgment of the appellate division of that court an appeal shall lie by writ of error to the Court of Appeals of Georgia. Acts 1913, p. 145. The question certified by the Court of Appeals relates to its jurisdiction to entertain writs of error from that court, as dependent upon the proposal of 1912 having been submitted and ratified agreeably to the provisions of the constitution. The basal proposition involved in the first question is the applicability of art. 3, sec. 7, par. 8, of the constitution of Georgia (Civil Code (1910), § 6437) to the proposal of amendments to that constitution by the General Assembly. That provision is as follows: "No law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof."

1. The word "law" in this constitutional provision is clearly confined to statutes within the power of the General Assembly to enact. What is the meaning of the word "ordinance"? Does it refer to or embrace proposals to amend the constitution? We will first turn to the constitution as furnishing internal aid to its interpretation. The constitution of 1877 consists of a comprehensive arrangement of the organic law in one instrument and certain ordinances attached thereto. It is declared therein "That the Governor shall issue his proclamation, ordering an election for members of the General Assembly, and a vote upon the ratification or rejection of this Constitution, as therein provided, and a vote upon the capital and homestead questions, as provided by the ordinances of this Convention." Civil Code (1910), § 6617. The constitution contains these provisions: Article 12, section 1, paragraph 3 (Civil Code (1910), § 6604): "All laws now of force in this State, not inconsistent with this Constitution, and the ordinances of this Convention, shall remain of force until the same are modified or repealed by the General Assembly. . ." Art. 12, sec. 1, par. 8 (Civil Code (1910), § 6609): "The ordinances of this Convention shall have the force of laws until otherwise provided by the General Assembly, except the ordinances in reference to submitting the homestead and capital question to a vote of the people, which ordinances, after having been voted on, shall have the effect of

constitutional provisions." Art. 3, sec. 7, par. 22 (Civil Code (1910), § 6450): "The General Assembly shall have power to make all laws and ordinances consistent with this Constitution, and not repugnant to the Constitution of the United States, which they shall deem necessary and proper for the welfare of the State." Art. 3, sec. 7, par. 13 (Civil Code (1910), § 6442): "All acts shall be signed by the President of the Senate and the Speaker of the House of Representatives; and no bill, ordinance, or resolution, intended to have the effect of a law, which shall have been rejected by either house, shall be again proposed during the same session, under the same or any other title, without the consent of two thirds of the house by which the same was rejected." When the framers of the constitution came to deal with the subject of amendments, the whole matter was comprehended in its 13th article. There it was provided: "Any amendment or amendments to this Constitution may be proposed in the Senate or House of Representatives; and if the same shall be agreed to by two thirds of the members elected to each of the two houses, such proposed amendment or amendments shall be entered on their journals, with the yeas and nays taken thereon. And the General Assembly shall cause such amendment or amendments to be published in one or more newspapers in each Congressional district, for two months previous to the time of holding the next general election, and shall also provide for a submission of such proposed amendment or amendments to the people at said next general election; and if the people shall ratify such amendment or amendments by a majority of the electors qualified to vote for members of the General Assembly, voting thereon, such amendment or amendments shall become a part of this Constitution. When more than one amendment is submitted at the same time, they shall be so submitted as to enable the electors to vote on each amendment separately." The clause respecting plurality of subject-matters, and the inclusion in the body of an act of matter different from what is expressed in the title, was brought forward from the Constitution of 1798. "The traditionary history of this clause is, that it was inserted in the Constitution of 1798, at the instance of General James Jackson, and that its necessity was suggested by the Yazoo Act. That memorable measure of the 17th of January, 1795, as is well known, was smuggled through the Legislature, under the caption of an act 'for the payment of the late State troops,' and a

declaration in its title, of the right of the State to the unappropriated territory thereof, 'for the protection and support of its frontier settlements.'" *Mayor &c. of Savannah* v. *Georgia, 4 Ga.* 38. The provision for the publication of the entire proposal to amend the constitution in one or more newspapers in each congressional district for two months previous to the time of holding the election was manifestly deemed a sufficient notice to the public at large of the exact provisions of the amendment, so that the people might advisedly cast their ballots of approval or disapproval of the proposed amendment. Again, it was ordered in that section that amendments should be separately submitted, supplying an additional safeguard against confusion of unrelated objects in one submission. Hence the reason of the rule as to title can have no application in the matter of amendments. There is no need of any caption, as the whole amendment is published in papers of general circulation, thus affording abundant opportunity for the voter to inform himself before he is called upon to vote. The words of par. 8, "No law or ordinance shall pass," etc., show that they are confined to legislation which the General Assembly may finally enact into law. The General Assembly can not adopt an amendment to the constitution. The legislature may propose it, but the people must adopt the proposal. The provision for amendment of the constitution is dealt with in an independent article, complete within itself. That article proposes the machinery for the amendment of the organic law. The word "ordinance," as used in the clause under consideration and as interpreted by other clauses of the constitution, has no reference to legislative proposals to amend the constitution.

The word "ordinance" was anciently used to distinguish between certain forms of statutes. "Where the proceeding consisted only of a petition from parliament and an answer from the king, these were entered on the parliament roll; and if the matter was of a public nature, the whole was then styled an ordinance: if, however, the petition and answer were not only of a public but a novel nature, they were then formed into an act by the king, with the aid of his council and judges, and entered on the statute roll." Bacon's Abridgment (A), Bouvier's Dictionary. In Webster's New International Dictionary, it is said to be "An authoritative decree or direction; specif., any public enactment, rule, or law promulgated by

governmental authority; esp.: (1) Eng. Hist. A law or regulation promulgated without the assent of one of the three powers (Crown, House of Lords, and House of Commons) necessary to an act of parliament. . . (3) A local law or regulation enacted by a municipal government, as a common council, board of aldermen, or the like. . . Historically the lines of distinction between what is an ordinance and what is a statute were not definitely drawn. The term was specifically applied to various enactments including: (a) Any of the decrees of the Ordainers. (b) The Ordinance of the Forest (33 & 34 Edw. I). (c) The Ordinance of the Staple or statute staple. (d) Any of the acts of the Long Parliament between 1641 and 1649, as the Self-denying Ordinance." The act of Congress, passed in 1787, establishing the government of the Northwest Territory is known as the ordinance of 1787.

A proposal by the legislature of amendments to the constitution is not the exercise of ordinary legislative functions, and is not subject to constitutional provisions regulating the introduction and passage of ordinary legislative enactments. It has been held that no title is necessary to a proposed amendment, and if one is inserted it may be disregarded. 6 Am. & Eng. Enc. Law (2d ed.), 906; In Re Senate File No. 31, 25 Neb. 864 (41 N. W. 981); Nesbit v. People, 19 Colo. 441 (36 Pac. 221); Julius v. Callahan, 63 Minn. 154 (65 N. W. 267); Hays v. Hays, 5 Idaho, 154 (47 Pac. 732); People ex rel. Elder v. Sours, 31 Colo. 369 (74 Pac. 167, 102 Am. St. R. 34). We conclude, therefore, that the word "ordinance" in the constitutional provision first above referred to, comprehends any statute or resolution which the General Assembly may constitutionally enact, and does not apply to proposals for amendments to the constitution as initiated by the legislature, pursuant to article 13 of the constitution.

2. For the reasons stated in the foregoing division, the proposal of 1912 is not repugnant to art. 3, sec. 7, par. 17, of the constitution, that "the amending or repealing act shall distinctly describe the law to be amended or repealed, as well as the alteration to be made." The proposal was to amend a particular article, section, and paragraph of the constitution, by authorizing the establishment of a court. This included all of the machinery necessary to the establishment of that court, including appellate procedure. When the voters adopted this proposal it became a part of the constitution

by executive proclamation. Where an amendment to the constitution has been proposed by the legislature, duly submitted to the voters of the State for ratification or rejection by them, and has been ratified, so that the amendment has become an integral part of the constitution, it can not be declared void on the ground that in some particular it does not concur with some other portion of the same instrument. The different provisions of the constitution should be harmonized if practicable; but if there should be conflict between the amendment and the constitution, the amendment, being the last expression of the sovereign will of the people, will prevail as an implied modification, pro tanto, of the former provision. *Hammond* v. *Clark,* 136 *Ga.* 313 (10), 314 (71 S. E. 479, 38 L. R. A. (N. S.) 77).

3. The proposal of 1912 provides that "All persons voting at said election in favor of adopting the said proposed amendment to the constitution shall have written or printed on their ballots the words 'for ratification of amendment to Article 6, Section 7, of the Constitution, authorizing the establishment of other Courts in certain cities in lieu of Justice Courts.'" The question is, have the people, voting in this form, voted for ratification of all the provisions of the amendment, or only for ratification of those provisions which authorize the establishment of other courts in certain cities in lieu of justice courts? Article 13 of the constitution did not prescribe the details relating to the manner of submission, but left them to the wisdom of the legislature. It did provide for the publication of the proposed amendment, as a means of giving wide and extensive information of the exact nature of the proposed change or addition. It was never contemplated that the entire proposed amendment should be printed on the ballot. It was within legislative discretion to adopt some formula by which the voter would express his assent or dissent to the proposed amendment. The formula prescribed by the legislature was not intended for the purpose of informing the voter as to the full contents of the amendment. On the contrary, the formula was intended as the declaration by the voter of his approval or disapproval of the amendment which had been published in each congressional district. The amendment was submitted to the elector, and the formula prescribed was simply to elicit his expression as to whether or not the proposed amendment should become a part of the organic law. The formula written or

printed on his ballot was but the legislative means of obtaining his expression upon the published proposal; and when he adopted the formula he indicated his vote upon the whole amendment which was submitted, and not a mere part.　　　*All the Justices concur.*

LUMPKIN, J. I concur in the ruling that the constitutional requirement that no law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof, does not apply to a constitutional amendment, so as to invalidate it after it has been proposed by the necessary vote in the legislature, has been duly published, and has been adopted by the people. But I think some of the discussion is broader than the necessity of the case requires. I accordingly concur in the judgment.