ENGLAND et al. v. McCOY, Mayor

No. 6762.

Court of Civil Appeals of Texas.

Texarkana.

June 3, 1954.

Rehearing Denied June 24, 1954.

M. D. Emerson, Paris, for appellants.

Moore & Moore, O. B. Fisher, and T. E. Jack Springer, Paris, for appellee.

FANNING, Justice.

This is a contest of a special charter election held in the City of Paris, Texas, on September 26, 1953. Appellee's motion for summary judgment was granted by the trial court and appellants have appealed.

Appellants present one point, which reads as follows: "The error of the trial court in holding that a valid special election can be held when the proposition to be voted upon is neither described nor identified in either the ordinance calling the election, the notice of the election or the ballot used to hold the election."

Prior to the election in question and on February 27, 1953, an election was held in the City of Paris to determine whether a commission should be chosen to frame a new charter for the city to be submitted at a subsequent election for adoption or rejection. This resulted in an affirmative majority vote and in the election of a charter commission for such purpose. The commission so elected thereafter framed a proposed new charter and presented it to the city council on the 27th day of July, 1953, whereupon the council adopted an ordinance, the caption of which is as follows: "An ordinance submitting to the qualified voters of the City of Paris, Texas, in a special election to be held between the hours of 8:00 o'clock a. m. and 7:00 p. m. on Saturday, the 26th day of September, 1953, the following question: 'Do you favor the proposed charter?' and providing for the election of a mayor, an alderman from each of the four wards, one alderman-at-large, a city secretary, a city attorney, a city recorder, and a city marshal, in the event that a majority of the qualified voters voting at such election shall vote in the affirmative on the question of the adoption of the proposed charter." We deem it unnecessary to here quote the entire ordinance, which is quoted at length in the record. A copy of the ordinance was published in its entirety once each week for four consecutive weeks following adoption in a daily newspaper of general circulation in the city and duly executed notices of such election were posted by the chief of police of the city at least 30 days prior to the election at each of the four polling places designated by the ordinance. We deem it unnecessary to here quote the notice but it may be found in the record. A copy of the proposed charter was by the city clerk of the City of Paris mailed to each qualified

voter of the City of Paris more than thirty days prior to September 26, 1953.

The record further shows that the election generated great public interest among the voters and citizens of the city, that the issue of the adoption or rejection of the proposed charter was hotly contested, that at least twenty public speeches were made in the city on the issue, all of which were given publicity in the two newspapers in Paris, for more than thirty days prior to the election, that radio announcements were carried for a week or more prior to the day of election, that three radio speeches in opposition to the charter were made over the local radio station, that during the week or so preceding the day of election both sides circulated and published in the newspapers specimen ballots instructing the voters how to vote on said issue, and that at the time and place of the holding of said election, the question for determination then and there by the voters, the effect of the ballot cast as framed and to be cast, were all matters of common and general information in Paris, Texas, and its environs.

The ballot in question was endorsed "Special Election, Sept. 26, 1953," and submitted the question: "Do you favor the proposed charter?" and left spaces for the voters to mark "No" or "Yes." The election resulted in rejection of the proposed charter by a majority of 320 votes out of a total of 3,216.

A copy of the proposed charter was introduced in evidence. The cover page of the charter is entitled: "Proposed Charter of the City of Paris." The concluding section of the proposed charter reads as follows: "Submission of Charter to Electors— The Charter Commission, in preparing this charter, finds and decides that by reason of the form of government provided herein and the nature of the provisions relating thereto, it is not practicable to segregate each subject or article so as to permit a separate vote of 'yes' or 'no' thereon; and that it should be adopted in its entirety. Therefore the Charter Commission directs that said charter be voted upon as a whole and that it shall be *submitted to the qualified voters of the City of Paris at an election*

*to be held for that purpose on the 26th day of September, A. D. 1953. If a majority of the qualified voters voting in such election shall vote in favor of the adoption of this charter, it shall become the charter of the City of Paris, and after the returns have been canvassed, the same shall be declared adopted."* (Emphasis added.)

The City of Paris is a Home Rule city and the election in question was held under the statutes pertaining to Home Rule cities found in Chapter 13, Title 28, Vernon's Texas Civil Statutes. Article 1165, among other things, provides that the voters of a city "May, * * * at an election held for that purpose, *adopt or amend their charter * * *"*; and further provides that the governing body of the city may by two-thirds vote of its members, and upon petition of ten per cent of the qualified voters of the city shall "* * * provide by ordinance for the submission of the question, 'shall a commission be chosen to frame a new charter'?" Article 1166, among other things, provides that the submission of "such question" shall be by ordinance calling such special election to be "held not less than thirty days nor more than ninety days after the passage of said ordinance and the *publication thereof* in some newspaper published in said city"; and further directs that the ballot shall bear no party designation and shall make provisions for the election of a charter commission (to function if a majority votes in favor of the question). (Emphasis added). Article 1167, among other things, provides that the charter so framed by the charter commission shall be submitted to the voters at "an election to be held at a time fixed by the charter commission * * *"; and that: "Not less than thirty days prior to such election, the governing body shall cause the city clerk or city secretary to mail a copy of *the proposed charter* to each qualified voter in said city". (Emphasis added.) Article 1169, among other things, provides: "If such *proposed charter* is approved by a majority of the qualified voters, voting at said election, it shall become the charter of said city until amended or repealed." (Emphasis added.)

In Community Natural Gas Co. v. Northern Texas Utilities Co., Tex.Civ.App., 13 S.W.2d 184, 195, writ dismissed, the court stated: "Neither the Legislature nor the city charter prescribed any particular form of an ordinance, and in such cases municipal bodies may use any form of expression which suits them, provided it expresses their will that the ordinance should exist and indicates its terms and the objects to which it applies. 43 C.J. 520, § 801; City of Brenham v. Holle [& Seelhorst] (Tex. Civ.App.) 153 S.W. 345." In 29 C.J.S., Elections, § 170, page 246, it is stated: " * * * it is not customary to print in extenso on the ballot the thing to be voted for, but it is sufficient if enough is printed to identify the matter and show its character and purpose." In Reynolds Land & Cattle Co. v. McCabe 72 Tex. 57, 12 S.W. 165, the Supreme Court, in an opinion by Chief Justice Gaines, held that where no form of ballot was prescribed all that was required was that the proposition to be voted upon be submitted with sufficient definiteness and certainty as not to mislead and that an election to determine whether a tax should be imposed for "school purposes" was sufficient to apprise the voters that the proposed tax was for the purposes permitted by law and stated in the petition for election. In Whiteside v. Brown, Tex.Civ.App., 214 S.W.2d 844, 851, writ dismissed, holding the ballot on a constitutional amendment to be sufficient, the court stated: "Some of the details and provisions, including the one to which appellants direct our attention, were omitted. This is a necessary consequence of the failure to print the amendment, in extenso, upon the ballot. It must have been presumed that the voter would familiarize himself with the contents of the proposed amendment before entering the ballot box, otherwise the legislature would have required a full copy on the ballot. It is not shown that any voter was misled or deceived by the form of submission of this amendment. No one who had previously read the amendment could have been misled or deceived by the ballot used."

The Supreme Court of Texas in the case of Railroad Commission v. Sterling Oil & Refining Co., 147 Tex. 547, 218 S.W.2d 415, 418, held that a ballot used in an election on a constitutional amendment which stated that the proposed amendment was to authorize the legislature to provide for appeals direct to the Supreme Court in instances involving constitutionality of certain laws and orders, was not invalid as being too indefinite to apprise voters of the purpose of the proposed amendment. In this case the court stated: "The Constitution requires that certain publicity shall be given a proposed amendment prior to an election. This is done to identify the amendment and to show its character and purposes, so that the voters will be familiar with the amendment and its purposes when they cast their ballots. In many instances it would be impracticable to print an entire amendment on a ballot, and the method adopted in submitting the amendment under consideration was similar to that used in submitting many other amendments in the past. The method used in this instance was sufficient." The Supreme Court in this opinion, among other cases, cited Cooney v. Foote, 142 Ga. 647, 83 S.E. 537, and Lovett v. Ferguson, 10 S.D. 44, 71 N.W. 765. In Cooney v. Foote, supra, the court stated [142 Ga. 647, 83 S.E. 540]: "Article 13 of the Constitution did not prescribe the details relating to the manner of submission, but left them to the wisdom of the Legislature. It did provide for the publication of the proposed amendment, as a means of giving wide and extensive information of the exact nature of the proposed change or addition. It was never contemplated that the entire proposed amendment should be printed on the ballot. It was within legislative discretion to adopt some formula by which the voter would express his assent or dissent to the proposed amendment. The formula described by the Legislature was not intended for the purpose of informing the voter as to the full contents of the amendment. On the contrary, the formula was intended as the declaration by the voter of his approval or disapproval of the amendment which had been published in each congressional district." In Lovett v. Ferguson, supra, the court said [10 S.D. 44, 71 N.W. 768]: "It is a matter of common knowledge that, during the 18 months preceding the election, the question of this

amendment was the subject of general discussion by the press, in the churches, and upon the platform, and there could have been but very few persons, if any, who did not fully comprehend the nature of the amendment and the effect of a yes or no vote. The mere informality, therefore, of the method in which the question was submitted, should not defeat the will of the people, where it is clearly apparent, as in this case, that the electors have not been deprived of any substantial right."

In Shaw v. Lindsley, Tex.Civ.App. Dallas, 195 S.W. 338, 340, the court stated: "We have considered the fourth and fifth assignments of error, which, in effect, insist that propositions first and second, as framed and submitted, were not in such terms as to give the voters a clear idea of the scope and character of the proposed amendments. A copy of the ballot having been mailed to each voter 30 days before election, it was for the purpose of giving to the voter an opportunity to study and analyze the amendments, and we conclude that it cannot now be said that the voters did not act with a clear understanding of the meaning of each proposition. Such a plea cannot now be urged for setting aside the election."

In Altgelt v. Callaghan, Tex.Civ.App., 144 S.W. 1166, 1167, writ dismissed, a charter election contest, two ballots were furnished the voters, on one of which was printed the words " 'For the New Charter,' " and on the other the words, " 'Against the New Charter' ". Objection (which was overruled) was made in this case that two ballots were used instead of having both questions submitted on a single ballot but there was no contention or suggestion made that the substance of the ballot " 'For the New Charter' " and " 'Against the New Charter' ", was not sufficient.

Turner v. Lewie, Tex.Civ.App., 201 S.W.2d 86, 88, writ dismissed, relied on by appellant, and which appellee says is strong negative authority in his favor, was concerned with a city election in the City of Gainesville dealing with 8 specific amendments of a city charter. The City Council of Gainesville on October 1, 1946, passed a resolution stating that on October 28, 1946, " 'it is the *intention of the City Council* of the City of Gainesville, Texas, to meet in special session for *the purpose of passing an ordinance* authorizing an election to be held on the 29th day of November, 1946 * * * *submitting amendments to the existing charter* of said city * * *.' " In accordance with this notice an ordinance was passed on October 28, 1946, by the City of Gainesville calling an election on the proposed charter amendments *but neither this ordinance nor any notice of it was published or posted* but copies of the ordinance were mailed to the voters. The election was contested for lack of publication of the ordinance *after* its passage, that the notice of *intention* to pass the ordinance was insufficient notice of the election because it did not contain the substance of the 8 amendments, and that the ballot was illegal and insufficient in that it did not apprise the voters of the effect of their votes. After reviewing the statutes applicable to *charter amendments* (but not applicable to the instant situation where the passage of a *whole charter* was involved), the court in Turner v. Lewie, supra, said: "To sum up, notice must first be given of the intention to pass the ordinance calling the election, Art. 1171. After such notice is given, the ordinance calling the election is passed, or, of course, may not be passed. If it is passed, then notice must be given of the election called for in the ordinance. Art. 1170. The notice so required is the same notice that is required in the case where the question of a new charter is to be submitted. * * * Since Art. 1166 does not prescribe the length of time for which said notice shall be published, it would appear that publication in one issue of the newspaper would constitute a sufficient compliance with the law. Art. 29a, Vern. Tex.Civ.St., Acts 1941, 47th Leg. p. 480, ch. 303. * * * If we be in error in holding that a second notice was required to be published, that is to say, that notice had to be given both before and after the passage of the ordinance, we nevertheless hold that the notice published before the ordinance was passed, which is set out in full in the early part of this opinion, was not suffi-

cient to give the voters fair notice of the purposes of the election or the nature and substance of the proposed amendments. According to the notice, the amendments would 'change the city government from a City Manager form of government to the Aldermanic form of city government' and would make other changes to the charter to conform thereto. The term 'Aldermanic form of city government' does not have such definite legal significance as to apprise the voters of the nature of the proposed amendments. * * * The most serious irregularity charged, as we view the case, pertains to the form of the ballot. Eight proposed charter amendments were submitted to the voters. The form of the ballot was as follows:

" 'Official Ballot
Gainesville, Texas
Friday, November 29, 1946
For Amendment No. I
Against Amendment No. I
For Amendment No. II
Against Amendment No. II
For Amendment No. III
Against Amendment No. III
For Amendment No. IV
Against Amendment No. IV
For Amendment No. V
Against Amendment No. V
For Amendment No. VI
Against Amendment No. VI
For Amendment No. VII
Against Amendment No. VII
For Amendment No. VIII
Against Amendment No. VIII'

"The statutes do not prescribe the form of ballot to be used in this sort of election. The ballot should contain a description of the proposition submitted in such language as to constitute a fair portrayal of the chief features of the proposed law, or amendment, in words of plain meaning, so that it can be understood by persons entitled to vote. 18 Am.Jur., p. 298. It is not customary to print the full text of the proposed law or amendment on the ballot, but it is sufficient if enough is printed on the ballot to identify the matter and show its character and purpose. 29 C.J.S., Elections,

§ 170, page 246. * * * *For the voters in the election now under review to have voted intelligently, they would have been compelled to remember the nature of each of the amendments submitted and the number of each and the order in which they appeared on the ballot. Obviously, the ballot did not meet the tests announced by the above authorities."* (Emphasis added.)

The ordinance, the notice of election, and the ballot in the case at bar refer to but one very plain subject, to-wit, whether the *proposed charter* will be accepted or rejected by the election to be held for that purpose (with the alternative election of the city officials if the charter was adopted). The ordinance, election notice, and ballot in the Turner v. Lewie case referred to concerned 8 amendments which would change the city government from a City Manager form to an Aldermanic form, and the 8 amendments were described by number alone on the ballot, and as the court said in that case for the voters to have voted intelligently they would have been compelled to remember the nature of each of the 8 amendments the number of each and the order in which they appeared on the ballot. In the case at bar the issue and the ballot were simple. "Do you favor the *proposed charter?*" The pertinent statutes refer to the charter as the *proposed charter*. The printed copy of the proposed charter had printed on it in large black capital letters "Proposed Charter of the City of Paris", and the City Clerk, as Art. 1167 provides, mailed a copy of the *proposed charter* to the qualified voters of the City. There is no contention that any other charter than the one submitted to the voters had at any time been proposed to the charter commission. Also under the law no charter election could be held oftener than two years. Art. 1165. The voters of the city in the case at bar had been furnished copies of the proposed charter as the law directs and had ample opportunity to familiarize themselves with the proposed charter and to become informed as to the merits or demerits of same before they entered the polling places. The proposed charter covered 42 pages of small print and contained

170 separate sections. Obviously the entire charter could not reasonably have been printed on the ballot, or placed in the ordinance and election notice, and very obviously any attempt to state a fair and informative shorthand rendition of the charter and its 170 sections would in itself have constituted a task fraught with difficulties which would in itself be very lengthy and would perhaps have confused the voter instead of shedding light upon the issue. The charter was submitted as a whole and we think the 3216 voters who voted on the simple issue "Do you favor the proposed charter?" were not misled or confused in the light of the record in this case.

We have carefully considered the ordinance calling the election in question, the notice of the election and the ballot, and are of the opinion that same, in view of the record in this case, are sufficient to fairly inform the voters of the question submitted and that the election in question was in all things a valid election. We respectfully overrule appellants' point.

The judgment of the trial court is affirmed.