HORRIGAN *et al. v.* RIVERS *et al.*

142

No. 11272.   September 29, 1936.

*Spence M. Grayson,* for plaintiffs.

*M. J. Yeomans, attorney-general, J. W. Culpepper, B. D. Murphy, O. H. Dukes,* and *E. D. Rivers,* for defendants.

Russell, Chief Justice.   It appears from the records in the office of the Secretary of State that the legislation, a portion of which the petitioners in this case sought to enforce by mandamus, is as follows:

"An act to propose to the qualified voters of the State of Georgia an amendment to paragraph 1, article 7, section 1, of the constitution of the State of Georgia, authorizing the levying of a tax by the State of Georgia for the payment of old age pensions.

"Section 1.   Be it enacted by the General Assembly of the State of Georgia, and it is hereby enacted by the authority of same, that the constitution of the State of Georgia be amended by

adding the following paragraph to follow paragraph 1, article 7, section 1, the said paragraph to be known as paragraph 1-A, to wit:

" 'The General Assembly may levy a uniform per capita tax for the support of and maintenance of the aged poor of the State, under such restrictions and limitations as it may provide.' Provided, that the General Assembly shall not have the power to create any debt on the State by virtue of any old-age pension or allotment of money for the support and maintenance of the aged herein provided for.

"Section 2. Be it further enacted by the authority aforesaid, that when said amendment shall be agreed to by 2/3 (two thirds) votes of the members elected to each house, it shall be entered upon the journal of each house, with the ayes and nays thereon, and published in one or more newspapers of this State for two months previous to the time for holding the next general election, and shall at the next general election be submitted to the people for ratification. All persons voting at said election in favor of adopting the said proposed amendment to the constitution shall have written or printed on their ballots the words, 'For ratification of amendment to paragraph 1, article 7, section 1 of the constitution of the State of Georgia, providing for the levying of a tax by the State for the payment of old-age pensions.' And all persons opposed to the adoption of said amendment shall have written or printed on their ballots the words, 'Against ratification of amendment to paragraph 1, article 7, section 1 of the constitution of the State of Georgia, providing for the levying of a tax by the State for the payment of old-age pensions'; and if a majority of the electors qualified to vote for members of the General Assembly, voting thereon, shall vote for ratification thereof, when the results shall be consolidated as now required by law in elections for members of the General Assembly, then said amendment shall become a part of paragraph 1, article 7, section 1, and the Governor shall make a proclamation thereof as provided by law.

"E. D. Rivers, Speaker of the House.

"Andrew J. Kingery, Clerk of the House.

"Charles D. Redwine, President of the Senate.

"John W. Hammond, Secretary of the Senate.

"Vetoed, March 21, 1935, Eugene Talmadge, Gov."

As a result of amendments to the petition there are no issues of fact raised by the record, and the issues presented are purely questions of law.

The writ of error presents for the determination of this court the question whether the judge of the superior court erred in refusing to make absolute a mandamus nisi requiring the Speaker of the House of Representatives and the President of the Senate to advertise and thereby advise the qualified voters that there would be an election submitting to the people the ratification or rejection of a proposal to amend the State constitution, as shown in the foregoing statement. In the decision upon this controlling point there arise two subsidiary questions. One, whether under the provisions of the constitution of this State there is imposed by law any duty on the part of the Speaker of the House and the President of the Senate to advertise, as required by the constitution, the pendency of a proposed amendment to the constitution, which must be specified and submitted at the next general election. The second subsidiary question which arises is whether the proposed amendment provided any machinery for its execution in case the requisite vote were obtained on the day of the proposed general election. We are of the opinion that the judge correctly held that neither the Speaker of the House nor the President of the Senate is obliged as a matter of duty to advertise this proposed amendment. The petition for mandamus alleges as to both the Speaker of the House and the President of the Senate that they are the chief executive and ministerial officers of their respective bodies. Aside from the question of their duty, with which we will deal later, it is not true, as a matter of law, that the Speaker of the House and the President of the Senate are ministerial officers of their respective houses. These offices are held, in the House of Representatives by the Clerk of the House, who is not appointed by the speaker but is elected by the house in the same manner as the speaker himself is elected; and the same thing is true as to the President of the Senate and the Secretary of the Senate. What we have just stated as to this matter has been recognized, so far as we are aware, since Georgia has had a bicameral legislative body of its own. In recognition of this principle, no act of the General Assembly, so far as we are aware, has ever been submitted to the chief executive for his approval or disapproval, or

considered as being a complete act, that was not signed by the Clerk of the House and the Secretary of the Senate as well as by the speaker and the president after the proposed legislation had been properly examined by the engrossing and enrolling committees in each house in their turn. So we may well say that the special plea of nonjoinder of all proper parties could properly have been sustained by the judge. This point, however, is of little importance in the view we take of this case, because we are of the opinion that the judge did not err in denying the application for mandamus, although he did not expressly rule upon the merits of the demurrers. It is axiomatic that an officer can not be compelled by mandamus to do an unauthorized act, any more than he can be compelled by mandamus to do anything which the petitioner might accomplish by another and different remedy. Under the provisions of the constitution, there is imposed upon neither the Speaker of the House nor the President of the Senate any duty as to advertising notices of any kind with regard to the adoption of constitutional amendments, whether the scope of their official duties includes both executive and ministerial functions or not. Article 13, section 1, paragraph 1, of the constitution (Code, § 2-8601), declares: "Any amendment or amendments to this Constitution may be proposed in the Senate or House of Representatives; and if the same shall be agreed to by two thirds of the members elected to each of the two houses, such proposed amendment or amendments shall be entered on their journals, with the yeas and nays taken thereon. And *the General Assembly* shall cause such amendment or amendments to be published in one or more newspapers in each Congressional District, for two months previous to the time of holding the next general election, and shall also provide for a submission of such proposed amendment or amendments to the people at said next general election; and if the people shall ratify such amendment or amendments, by a majority of the electors qualified to vote for members of the General Assembly, voting thereon, such amendment or amendments, shall become a part of this constitution. When more than one amendment is submitted at the same time they shall be so submitted as to enable the electors to vote on each amendment separately." In reading the foregoing constitutional provision it will be noted that the constitution declares that "*the General-Assembly* shall cause

such amendment or amendments to be published in one or more newspapers *in each Congressional District;*" and in this connection attention might be called to the fact that according to the copy of the proposal, as shown above, it provided only for publication for two months "in one or more newspapers *of this State.*" From this and other features, it is evident that the proposal was hastily and loosely drawn, without the diligent and painstaking care which should characterize such an important undertaking. But, regardless of all other considerations, the direction given in the constitution as to publication is to the General Assembly as a whole, not to any two members, regardless of their position as officers in the General Assembly. Therefore, in the absence of a constitutional provision specifically designating the particular officers referred to in this petition, and in the absence of such a designation in the proposal itself, there was no duty imposed upon them nor are they empowered to act for the General Assembly as a whole in advertising the proposed amendment as prescribed in article 13, section 1, paragraph 1. In reading the constitutional provision now under consideration it also plainly appears that the General Assembly as a whole is required to provide for the submission of such proposed amendment or amendments. In other words, as said by this court in *Cooney* v. *Foote,* 142 *Ga.* 647 (83 S. E. 537, Ann. Cas. 1916B, 1001), "When the framers of the constitution came to deal with the subject of amendments, the whole matter was comprehended in the 13th article." In the case just cited, the publication sufficiently complied with the requirement of article 13, section 1, paragraph 1. The election had been held, and the proposed amendment ratified. A proclamation had been issued, announcing that the proposed amendment had been ratified; and this court held, for reasons stated in the opinion, that the amendment proposed by the General Assembly had become an integral part of the constitution.

We have dealt with the crucial issues and controlling questions; and therefore it is unnecessary to deal with other issues sought to be raised in this writ of error, further than as indicated in the headnotes. *Judgment affirmed. All the Justices concur.*